909 F.2d 643
 Gerry ADAMS, et al., Plaintiffs, Appellants,
v.
James BAKER, Secretary of State; Richard Thornburgh,
Attorney General; and Alan C. Nelson, Director of
the Immigration and Naturalization
Service, Defendants, Appellees.
 No. 89-1903.
 United States Court of Appeals,
First Circuit.
 Heard Feb. 6, 1990.
Decided July 26, 1990.
 
 Edward Copeland, with whom Leonard B. Boudin, Linda Bosniak and Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, were on brief, for plaintiffs, appellants.
 Thomas W. Hussey, Deputy Director, Office of Immigration Litigation, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., and Wayne A. Budd, U.S. Atty., Boston, Mass., were on brief, for defendants, appellees.
 Before CAMPBELL, BOWNES and TORRUELLA, Circuit Judges.
 TORRUELLA, Circuit Judge.
 
 
 1
 At issue before this court is the propriety of the district court's decision granting summary judgment to the government and dismissing plaintiffs'-appellants' challenge to the denial of a nonimmigrant visa to an alien, Gerry Adams. After careful analysis and review, we affirm the decision of the district court.
 
 I. BACKGROUND
 
 2
 In March, 1988, Gerry Adams, a citizen and resident of the Republic of Ireland, sought entry into the United States for the purpose of conducting a speaking tour. He proposed to address a variety of groups on subjects including the state of civil and human rights in the six counties referred to as Northern Ireland, as well as other related issues. At that time, Adams was the president of Sinn Fein, an organization which the United States Department of State believed to be the political arm of the Provisional Irish Republican Army ("IRA"), an organization engaged in terrorist activities in Northern Ireland and elsewhere. He was also an elected member of the British Parliament.
 
 
 3
 On the basis of the exclusionary provisions of Section 212(a)(28)(F) of the Immigration and Nationality Act of 1952, 8 U.S.C. Sec. 1182(a)(28)(F), United States consular officers in Belfast, Ireland, in consultation with the Deputy Secretary of State, determined that Adams was ineligible for admission into the United States because of alleged advocacy of and personal involvement with terrorist violence. His visa application was consequently denied. Following this denial, a United States citizen and several United States organizations and associations brought suit seeking to have the visa denial set aside, as well as an order compelling the State Department to admit Adams into the United States.[1]
 
 
 4
 The district court entered summary judgment for the State Department, holding that the government had provided a "facially legitimate and bona fide reason" for the alien's exclusion in accordance with the principles of Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). In so doing, the court implicitly rejected appellants' statutory and constitutional claims as insufficient to warrant Adams' entrance into the United States. For the reasons enumerated below, we affirm the decision of the district court.
 
 II. STATUTORY BACKGROUND
 
 5
 Contained within the Immigration and Nationality Act of 1952 ("Act"), 8 U.S.C. Sec. 1101 et seq., are the terms and conditions under which aliens are permitted to enter the United States--either as visitors or immigrants. While there are some exceptions, it is generally true that an alien must apply for and obtain an immigrant or nonimmigrant visa prior to entering the United States. 8 U.S.C. Secs. 1181(a) and 1182(a)(26). None of these exceptions are presently at issue.
 
 
 6
 Nonimmigrant visas, such as the one sought by Adams, may be granted to aliens seeking temporary admission into the United States for a variety of reasons. See 8 U.S.C. Sec. 1101(a)(15). It is the alien, however, who bears the burden of establishing "that he is eligible to receive such a visa ... or is not subject to exclusion under any provision of [the Act]...." 8 U.S.C. Sec. 1361. These exclusionary provisions are contained within the thirty-three separate categories of Section 1182(a), Subsection 28 being the one at issue in the present litigation. 8 U.S.C. Sec. 1182(a)(28).
 
 
 7
 8 U.S.C. Sec. 1182(a)(28) applies to eight different classes of aliens. It was under Subsection 28(F) that Adams' visa application was denied. That section provides for the exclusion of:
 
 
 8
 (F) Aliens who advocate or teach or who are members of or affiliated with any organization that advocates or teaches ... (ii) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his official character; or (iii) the unlawful damage, injury, or destruction of property; or (iv) sabotage[.]
 
 
 9
 8 U.S.C. Sec. 1182(a)(28)(F).[2] But the mere fact of an alien's inclusion under that subsection is not necessarily dispositive. Under 8 U.S.C. Sec. 1182(d)(3)(A), the provisions of Subsection 28 may be waived if the conditions enumerated by the McGovern Amendment ("Amendment"), 22 U.S.C. Sec. 2691, are satisfied. 8 U.S.C. Sec. 1182(d)(3)(A).
 
 
 10
 The amendment provides standards for the Secretary of State's determination of whether to recommend a waiver of subsection 28. It essentially requires the granting of a waiver, because such a waiver can only be avoided if the Secretary can certify to the Speaker of the House of Representatives that admission of the alien would be contrary to the security interests of the United States.
 
 
 11
 DeAllende v. Baker, 891 F.2d 7, 9-10 (1st Cir.1989). The Amendment, however, is applicable only to those aliens whose sole basis for exclusion is membership in or affiliation with a proscribed organization. "Nothing in this section may be construed as authorizing or requiring the admission to the United States of any alien who is excludible for reasons other than membership in or affiliation with a proscribed organization." 22 U.S.C. Sec. 2691(a). Since Adams was excluded because of his alleged involvement with terrorist violence, rather than because of affiliation with a particular group, the McGovern Amendment does not provide independent authorization for his admittance into this country.
 
 
 12
 But the McGovern Amendment is not the only source wherein exceptions to 8 U.S.C. Sec. 1182 may be found. Additional exceptions are delineated within the provisions of Section 901 of Public Law 100-204, which mandate that aliens not be denied visas or admission into the United States "because of any past, current, or expected beliefs, statements, or associations which, if engaged in by a United States citizen in the United States, would be protected under the Constitution of the United States." Temporary Prohibition on Exclusion or Deportation of Aliens For Certain Beliefs, Statements, or Associations, 101 Stat. 1399, Sec. 901(a) (1988), reprinted in 8 U.S.C.A. Sec. 1182 note, at 143 (West Supp.1990). That section does not apply, however, to aliens who "a consular official ... knows or has reasonable ground to believe has engaged, in an individual capacity or as a member of an organization, in a terrorist activity...." 101 Stat. 1399, Sec. 901(b)(2). Terrorist activity is defined by that section as "the organizing, abetting, or participating in a wanton or indiscriminate act of violence with extreme indifference to the risk of causing death or serious bodily harm to individuals not taking part in armed hostilities." Id. It is this provision which we address today.III. DENIAL OF ADAMS' VISA APPLICATION
 
 A. Standard of Review
 
 13
 Nowhere is the scope of judicial inquiry more limited than in the area of immigration legislation. E.g., Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977); Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). Indeed, the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." Shaughnessy v. Mezei, 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953). See also Fiallo v. Bell, 430 U.S. at 792, 97 S.Ct. at 1478; Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 reh'g denied, 343 U.S. 936, 72 S.Ct. 767, 96 L.Ed. 1344 (1952); The Chinese Exclusion Case, 130 U.S. 581, 9 S.Ct. 623, 32 L.Ed. 1068 (1889). The political character of this intrinsically executive function renders it "subject only to narrow judicial review." Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976) (citing Fong Yue Ting v. United States, 149 U.S. 698, 713, 13 S.Ct. 1016, 1022, 37 L.Ed. 905 (1893) (quoted in Fiallo v. Bell, 430 U.S. at 792, 97 S.Ct. at 1478)).
 
 
 14
 Even where, as here, challenges to immigration legislation and decisions are made based upon constitutional rights and interests of United States citizens, the Supreme Court has "rejected the suggestion that more searching judicial scrutiny is required." Fiallo v. Bell, 430 U.S. at 794, 97 S.Ct. at 1479. In Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, for example, the Supreme Court confronted the same issue as that now faced by this court. The issue in that case was whether certain provisions of the Immigration and Nationality Act relating to denial of visas to particular classes of aliens were unconstitutional because they deprived American citizens of various First Amendment rights.[3] Id. The Court held that:
 
 
 15
 when the Executive exercises this power [to admit an alien] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.
 
 
 16
 Id. at 770, 92 S.Ct. at 2585. Thus, if the Department of State's determination that Adams was ineligible to receive a visa under 8 U.S.C. Sec. 1182(a)(28)(D), and its concomitant refusal to grant him a waiver under the provisions of either the McGovern Amendment, 22 U.S.C. Sec. 2691, or Section 901, Public Law 100-204, was based on a "facially legitimate and bona fide reason," we will be constrained to uphold Adams' exclusion.
 
 
 17
 In reviewing the findings of the district court with regard to the factual circumstances surrounding the government's decision to exclude Adams from admittance into the United States, we look only for clear error. See, e.g., Langhammer v. Hamilton, 295 F.2d 642, 647 (1st Cir.1961). While conclusions of law are, conversely, reviewable de novo, see, e.g., North American Industries, Inc. v. Feldman, 722 F.2d 893, 898-99 (1st Cir.1983), the district court's application of the Kleindienst "facially legitimate" standard is a mixed question of law and fact, see Amanullah v. Nelson, 811 F.2d 1, 9-10 (1st Cir.1987). Therefore, our review in this case must be conducted using this dual standard of review.
 
 B. Rationale for Exclusion
 
 18
 The Department of State determined that Adams was ineligible for a visa under the provisions of 8 U.S.C. Sec. 1182(a)(28)(F) because of his advocacy of and personal involvement with IRA terrorist violence. The government concluded that this activity fit within the language of 8 U.S.C. Sec. 1182(a)(28)(F)(ii), (iii) and (iv), and that his involvement in terrorist violence barred application of Section 901, Public Law 100-204, as well as waiver of visa ineligibility under 8 U.S.C. Sec. 1182(d)(3) and the McGovern Amendment, 22 U.S.C. Sec. 2691(a), because Adams was excluded for reasons other than membership in a proscribed organization. It also found that there would be adverse foreign policy consequences associated with his admission.
 
 
 19
 Appellants take exception. On appeal, they essentially argue that Section 901 entitles Adams to a waiver of the exclusionary provisions of 8 U.S.C. Sec. 1182(a)(28), because Section 901 was enacted for the explicit purpose of prohibiting exclusion of aliens based upon ideological or political beliefs. This is, they assert, the only basis for Adams' exclusion. We disagree.
 
 
 20
 Contained within Section 901 is an express exception for those aliens who "a consular official ... knows or has reasonable ground to believe has engaged, in an individual capacity or as a member of an organization, in a terrorist activity...." 101 Stat. 1399, Sec. 901(b)(2). While "the mere abstract teaching ... of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action," Noto v. United States, 367 U.S. 290, 297-98, 81 S.Ct. 1517, 1520-21, 6 L.Ed.2d 836 (1961), quoted in Brandenburg v. Ohio, 395 U.S. 444, 448, 89 S.Ct. 1827, 1830, 23 L.Ed.2d 430 (1969), and cannot form the basis for exclusion, Adams' actions clearly went beyond the abstract. On the strength of the evidence before it, the district court could have reasonably concluded that these actions formed a "facially legitimate and bona fide reason" for denial of a visa to Adams.[4]
 
 
 21
 The State Department had evidence of Adams' involvement with, and leadership in, the IRA. In the affidavit submitted to the district court, the Deputy Secretary of State declared that "[t]here is reason to believe that, as commander of the Belfast Brigade, Adams had overall policy control over, and granted approval for, major PIRA terrorist operations carried out within the greater Belfast area." Not only did the State Department have information identifying Adams as the commanding officer of one of the three battalions of the IRA Belfast Brigade, but it also had evidence that he was the commander of the entire IRA Belfast Brigade during 1971-1972. Moreover, the Secretary of State had evidence of Adams' participation in a series of "Bloody Friday" bombings in Belfast, where 9 persons were killed and 130 were injured, as well as many other bombings. Finally, the State Department had information that Adams was a member of the IRA's Army Council, the body primarily responsible for setting the policy and strategy of the IRA, and which grants approval for major IRA terrorist campaigns. It believed that Adams was Chief-of-Staff of the Council for some period of time, and that, during his tenure, terrorist activities were intensified.
 
 
 22
 The consular judgment regarding Adams' relationship to terrorist violence and the reliability of the information used by the consular officer in reaching that judgment is subject only to very narrow review. We note, first, that in the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State, 8 U.S.C. Sec. 1104(a)(1), and are similarly not reviewable by courts. E.g., Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir.), cert. denied, Wan Shih Hsieh v. I.N.S., 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978); Rivera de Gomez v. Kissinger, 534 F.2d 518 (2d Cir.), cert. denied, 429 U.S. 897, 97 S.Ct. 262, 50 L.Ed.2d 181 (1976). Thus, while Section 901 does authorize judicial review over the question of whether there was a "facially legitimate and bona fide reason" for an alien's exclusion, that review is limited to the determination of whether there was sufficient evidence to form a "reasonable ground to believe" that the alien had engaged in terrorist activity.
 
 
 23
 Appellants essentially argue that the government's information was entirely based on several statements he made as President of Sinn Fein, as well as reports made in various printed forms, including books and newspapers. They argue that it was impermissible to exclude Adams on the basis of this information because the articles, books and other materials relied upon by the government would be inadmissible at trial both because they contain hearsay, and because the information relating to Adams' involvement in terrorist activities may be less than fully complete or reliable. Thus, they contend, this information could not properly form the basis of a "reasonable ground to believe" that Adams engaged in terrorist activities. We disagree.
 
 
 24
 The decision to prohibit an alien from entering the United States under Section 901 does require that the government "know[ ] or ha[ve] reasonable ground to believe" that the alien has "engaged in a terrorist activity." But the Rules of Civil Procedure and Evidence are not applicable to the consular processing of visa applications. Instead, consular officers are permitted to consider all available information in making their determinations. See 22 C.F.R. 41.102(b), 41.103(b) and 41.105(a). The evidence so used need not have qualified for admission in a court of law. Thus, "reasonable belief" may be formed if the evidence linking the alien to terrorist violence is sufficient to justify a reasonable person in the belief that the alien falls within the proscribed category. 22 C.F.R. 40.6; see also Hamid v. I.N.S., 538 F.2d 1389, 1391 (9th Cir.1976); Kasravi v. I.N.S., 400 F.2d 675, 677 (9th Cir.1968) (superseded by statute on other grounds as stated in McMullen v. I.N.S., 658 F.2d 1312 (9th Cir.1981)).
 
 
 25
 The question of whether the evidence is sufficient, however, to support a finding of "reasonable belief" is a question of law which courts must resolve. Upon review, we think that there is sufficient evidence to support such a finding, and hence that there was a "legitimate and bona fide reason" underlying the government's decision to exclude Adams from the United States. The fact that the information relied upon by the government came from printed sources does not render that belief intrinsically suspect, and the district court did not err in so concluding. The evidence of Adams' involvement in the violent activities of the IRA, both as a policy maker and as a field commander, provides a "facially legitimate and bona fide reason" for his exclusion. In making this determination, it is important to note that there need only have been a reasonable belief that Adams was involved in terrorist activity: it is not necessary to have proven his involvement in the activity beyond a reasonable doubt.
 
 
 26
 We need not continue. Finding, as we do, that the government's evidence linking Adams with terrorist activity constitutes a "facially legitimate and bona fide reason" for Adams' exclusion under Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, we uphold the decision of the district court granting defendants'-appellees' motion for summary judgment. As the district court found, Adams was denied entry because of his personal involvement with terrorism, rather than because of his ideas or his association with a particular group. Hence, neither the McGovern Amendment nor Section 901 of Public Law 100-204 apply.
 
 
 27
 Affirmed. Costs to be borne by appellants.
 
 
 
 [1]
 Adams had previously made six visa applications on six different occasions. All of them had been rejected
 
 
 [2]
 In the briefs submitted to this court, appellants make the argument that 8 U.S.C. Sec. 1182(a)(28)(F) is directed only against advocates of anarchism. We find this argument peccant. The statute clearly is not directed solely against those individuals who oppose all forms of organized government, but also operates to exclude aliens who advocate or teach violence against particular governments, destruction of property or sabotage. 8 U.S.C. Sec. 1182(a)(28)(F). 8 U.S.C. Sec. 1182(28)(A) pertains to anarchists. Interpreting Subsection 28(F) in the way that appellants urge would make it merely redundant, a result which we do not lightly countenance. Since appellants provide little support for their position, we need not dwell on this issue
 
 
 [3]
 It is, of course, beyond peradventure that Gerry Adams, an unadmitted and non-resident alien, has no right, constitutional or otherwise, to enter the United States. E.g., Kleindienst v. Mandel, 408 U.S. at 762, 92 S.Ct. at 2581; United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950). Nor does he have standing to seek either administrative or judicial review of the consular officer's decision to deny him a visa. Centeno v. Shultz, 817 F.2d 1212 (5th Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988); Ventura-Escamilla v. I.N.S., 647 F.2d 28 (9th Cir.1981); United States ex rel. Ulrich v. Kellogg, 30 F.2d 984 (D.C.Cir.), cert. denied, United States ex rel. Ulrich v. Stimson, 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005 (1929); Hermina Sague v. United States, 416 F.Supp. 217, 219 (D.C.P.R.1976). Consequently, while it is permissible to join Adams as a symbolic plaintiff, see Kleindienst v. Mandel, 408 U.S. at 762, 92 S.Ct. at 2581; Allende v. Shultz, 845 F.2d 1111, 1114 (1st Cir.1988), it is important to recognize that the only issue which may be addressed by this court is the possibility of impairment of United States citizens' First Amendment rights through the exclusion of the alien. Kleindienst v. Mandel, 408 U.S. at 762, 92 S.Ct. at 2581
 
 
 [4]
 The benefits of Section 901 are denied to those aliens who "support and assist" in terrorist violence, as well as those "actually pulling a trigger or planting a bomb." 133 Cong.Rec. H11344 (daily ed. Dec. 14, 1987). Included within the forbidden support and assistance are things such as "planning, recruiting, and fundraising." The district court concluded that, as president of Sinn Fein, Adams made multiple statements which provided a facially legitimate basis for excluding Adams from entrance into the United States. For example, in his inaugural address of that organization, Adams stated that "armed struggle is a necessary and morally correct form of resistance against [the governmental authorities in Northern Ireland]." We need not address the propriety of this determination, finding, as we do, that the State Department had competent evidence upon which it could reasonably find that Adams participated in terrorist activities. We note only that Noto v. United States, 367 U.S. at 297-98, 81 S.Ct. at 1520-21, governs the reliance upon speech-related activities as a basis for the exclusion of aliens into the United States