AMERICAN SOCIOLOGICAL ASSOCI-ATION, American Association of University Professors, American–Arab Anti–Discrimination Committee, Boston Coalition for Palestinian Rights, and Adam Habib, Plaintiffs

v.

Michael CHERTOFF, in his official capacity as Secretary of the Department of Homeland Security, and Condoleezza Rice, in her official capacity as Secretary of State, Defendants.

Civil Action No. 07–11796–GAO.

United States District Court,
D. Massachusetts.

Dec. 8, 2008.

Nashrina Bargzie, Melissa Goodman, Jameel Jaffer, Judy Rabinovitz, American Civil Liberties Union, New York, NY, Sarah R. Wunsch, ACLU of Massachusetts, Boston, MA, for Plaintiffs.

Thomas H. Dupree, Jr., U.S. Department of Justice, Christopher W. Hollis, Victor M. Lawrence, Office of Immigration Litigation, Thomas H. Dupree, Jr., U.S. Department of Justice, Washington, DC, for Defendants.

## OPINION AND ORDER

O'TOOLE, District Judge.

According to the second amended complaint filed in this action, Professor Adam Habib, a South African national, is "a prominent human rights activist, and a world-renowned scholar of democracy, governance, and social movements." (Second Am. Compl. ¶ 2.) The other plaintiffs are organizations that have extended invitations to Professor Habib to speak at events hosted by them in the United States. In order to accept the invitations and appear in person at such events, Habib would need to obtain an appropriate visa to enter the United States as a nonimmigrant visitor.

On May 11, 2007, Habib applied to the consular office of the U.S. State Department in South Africa for a nonimmigrant visa. After consulting with officials in Washington, D.C., the consular office denied his application on October 26, 2007, citing a provision of the Immigration and Nationality Act, which makes an applicant who "has engaged in a terrorist activity" ineligible for such a visa. 8 U.S.C. § 1182(a)(3)(B)(i)(I) (2000 & Supp.2006). Other than the citation to the statutory provision, no other explanation for the denial was given. Ineligibility on the cited statutory basis may be waived by the Attorney General,[1] at the recommendation of the State Department. *Id.* § 1182(d)(3)(A). In Habib's case, the State Department declined to recommend a waiver and accordingly the initial consular denial was final.

 Ordinarily, a consular denial of a visa application is not reviewable in the judicial branch. The plaintiff organizations claim, however, that denial of Habib's visa application infringed their rights under the First Amendment to the U.S. Constitution to have Habib come to America to speak and they seek both a declaratory judgment to that effect and an order enjoining the defendants from denying Habib a visa.

Insisting that the "doctrine of consular nonreviewability" bars this action, the defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted and/or lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1) & (6). The availability of a claim for review and the existence of subject matter jurisdiction are closely intertwined questions. As explained below, because the complaint states a constitutionally based claim for review of the visa denial, a federal question within this Court's subject matter jurisdiction is presented.

---

1. The Secretary of the Department of Homeland Security now exercises the waiver authority. *See* 22 C.F.R. § 40.301 (2006).

## I. Rule 12(b)(6): A Cause of Action Under Kleindienst v. Mandel

■ " 'The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come into this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.' " *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972) (quoting *Lem Moon Sing v. United States,* 158 U.S. 538, 547, 15 S.Ct. 967, 39 L.Ed. 1082 (1895)). In the context of visa denials, courts refer to this deference both to Congress, which sets the "terms and conditions for admission of aliens," and to the Executive, which carries out the congressional policy, as the "doctrine of consular nonreviewability." *See Saavedra Bruno v. Albright,* 197 F.3d 1153, 1159–60 (D.C.Cir.1999) (stating that "[i]n view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become known as the doctrine of consular nonreviewability"); *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986) (recognizing that "it has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review"); *Ventura–Escamilla v. INS,* 647 F.2d 28, 30 (9th Cir. 1981) (noting that "the doctrine of nonreviewability of a Consul's decision to grant or deny a visa."); *see also United States ex rel. Ulrich v. Kellogg,* 30 F.2d 984, 986 (D.C.Cir.1929) ("We are not able to find any provision of the immigration laws which provides for an official review of the action of the consular officers in such case by a cabinet officer or other authority.").

■ However, there is at least one limited exception to the doctrine of consular nonreviewability that permits judicial review when the consular denial of a visa may impact the First Amendment rights of persons within the United States. *See Mandel,* 408 U.S. at 770, 92 S.Ct. 2576. In *Mandel,* Ernest Mandel, a Belgian journalist and Marxist, had been invited to speak at conferences at American universities and similar venues, but he was denied a visa by the U.S. consulate in Brussels on the basis of a statutory provision making persons with certain communist affiliations ineligible for admission to the country. *Id.* at 756–57, 92 S.Ct. 2576 (citing Immigration & Nationality Act of 1952, 66 Stat. 163, 182, 8 U.S.C. §§ 1182(a)(28)(D) & (G)(v)). Persons who had invited Mandel to speak brought suit claiming, as in this case, that the decision to deny Mandel a visa prevented them from hearing and meeting with him in person for discussions and thus infringed their rights under the First Amendment. *Id.* at 759, 92 S.Ct. 2576. Although the State Department had recommended that Mandel's ineligibility be waived, the Attorney General declined to do so. *Id.*

The Supreme Court upheld the denial of the visa, but in doing so added a qualification to the doctrine of consular nonreviewability, implicitly recognizing that in some circumstances the denial of a visa might be subject to judicial review. *See id.* at 770, 92 S.Ct. 2576. The Court said:

> [W]hen the Executive exercises [the power to grant or deny a visa] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.

*Id.* In other words, the Executive's power to exclude an alien is unreviewable under the doctrine, even if exclusion might affect constitutionally protected interests of U.S. citizens, when the visa denial is done "on the basis of a facially legitimate and bona fide reason." Implied is at least the courts' power to review whether that condition has been met, at least in cases where there is a claim that the constitutional rights of U.S. citizens have been affected.

The First Circuit has applied *Mandel* twice. In *Allende v. Shultz,* 845 F.2d 1111, 1112–13 (1st Cir.1988), the plaintiffs were Americans who had extended speaking invitations to an alien, Mrs. Allende. A consular official in Mexico City denied her visa request on the ground that aliens who "advocate communism or are affiliated with communist organizations" were ineligible for admission to the United States. *Id.* at 1113 (citing 8 U.S.C. § 1182(a)(28)). The First Circuit affirmed the grant of summary judgment concluding that the State Department had failed to advance a "facially legitimate and bona fide reason for exclusion." *Id.* at 1114, 1116.

In *Adams v. Baker,* 909 F.2d 643, 643 (1st Cir.1990), the plaintiffs made a similar claim that their First Amendment rights had been infringed by the denial of a visa to Gerry Adams, an officer of Sinn Fein (the political arm of the Irish Republican Army) whom they had invited to the United States for a speaking tour. The court of appeals upheld the district court's grant of summary judgment for the government after concluding that "the State Department had competent evidence upon which it could reasonably find that Adams participated in terrorist activities." *Id.* at 648 n. 4. Applying what it took to be the proper standard of judgment from *Mandel,* the court said: "On the strength of the evidence before it, the district court could

have reasonably concluded that [Adams'] actions formed a 'facially legitimate and bona fide reason' for denial of a visa to Adams." *Id.* at 648.

■ In *Adams,* as in *Mandel,* the plaintiffs' claim that the denial of the visa was improper was rejected because the reason the government had given for the denial was good enough—it was "facially legitimate and bona fide." *See* 408 U.S. at 768, 92 S.Ct. 2576, 909 F.2d at 650. In the present case, however, the government has not given a reason for the denial. The defendants argue that where no reason is proffered, no review is permitted. They call attention to the fact that the *Mandel* Court explicitly reserved that question: "What First Amendment or other grounds may be available for attacking exercise of discretion for which no justification whatsoever is advanced is a question we neither address nor decide in this case." *See* 408 U.S. at 770, 92 S.Ct. 2576.

The defendants read too much into that reservation. A statement that a particular issue has not been considered or resolved cannot be taken as implying that it has been, and in one side's favor. If any positive content were to be attributed to the reservation beyond its simple and obvious meaning it would more likely be something like, "We have not considered what further review of a visa denial might be necessary or appropriate where no facially legitimate and bona fide reason for the denial has been given." In other words, if the reservation were be read to intimate anything about review in a "no justification whatsoever" case, it would at least as plausibly suggest *more* vigorous review than no review at all. The incentive the defendants' proposed interpretation would give the government would be perverse: better to give no reason for a denial so that it would be unreviewable than to give a reason and be second-guessed by a court. It seems

unlikely in the extreme that by including the reservation the Court intended to signal a willingness to accommodate evasion of the limited rule of review it was announcing.

The defendants also try to distinguish *Mandel* in another way. The executive action at issue in *Mandel* was the Attorney General's refusal to grant a waiver of Mandel's ineligibility for admission to the United States, not the original decision by the consular office in Belgium to deny his visa application. *See* 408 U.S. at 758–59, 92 S.Ct. 2576. The State Department had recommended to the Attorney General that Mandel's ineligibility be waived, but the Attorney General, acting through the Immigration and Naturalization Service, declined to give the waiver. *Id.* In contrast, in the present case, Habib's visa application was denied by the consular office in South Africa, the State Department did not recommend that Habib's ineligibility be waived, and there was consequently no decision about waiver made by the Secretary of the Department of Homeland Security, successor to the Attorney General in the waiver process.

The gist of the defendants' argument is this: Congress has established standards making some aliens ineligible for admission to the United States. 8 U.S.C. § 1182(a). Consular officers are empowered to grant visas to alien nonimmigrants upon proper application, unless "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa ... under section 1182 of this title." *Id.* §§ 1201(a)(1)(B) & (g)(3). Even the Secretary of State herself cannot override the decision of a consular officer to grant or deny a visa. *Id.* § 1104(a) (giving the Secretary power of administration and enforcement of laws relating to "the powers, duties, and functions of diplomatic and consular officers of the United States, *ex-cept those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas* ") (emphasis added). The visa granting or denying decisions of consular officers are similarly exempt from judicial review under the doctrine of consular nonreviewability. In *Mandel*, however, the Supreme Court did not review a consular decision, but rather a decision of the Attorney General declining to waive—or, in effect, supersede—the consular decision. 408 U.S. at 754, 92 S.Ct. 2576; *see* 8 U.S.C. § 1182(d)(3)(A) (authorizing the Attorney General, on the recommendation of the Secretary of State, to grant a temporary visa to an alien otherwise ineligible under § 1182(a)). Since the Court only reviewed a waiver decision by the Attorney General, then *Mandel* should be understood to permit limited review only of waiver decisions, not original consular decisions.

There are a couple of weaknesses to this argument. First, the Court in *Mandel* rejected a similar argument by the plaintiffs there that a substantial distinction existed between an original consular denial *simpliciter* and a subsequent refusal to grant a waiver. 408 U.S. at 767, 92 S.Ct. 2576. The plaintiffs had conceded that Congress could enact a blanket rule of ineligibility to be applied by consular officers without any possibility of review, but they argued that by authorizing a waiver procedure, Congress provided an occasion for the exercise of executive discretion, which discretion would have to be exercised in a way that was consistent with the plaintiffs' First Amendment rights. *Id.* The Court did not accept the argument that the discretionary waiver decision should be reviewable whenever it implicated First Amendment interests of persons in the United States. *See id.* at 768, 92 S.Ct. 2576. Indeed, the Court explicitly disapproved of the prospect that "courts in each case would be required to weigh the

strength of the audience's interest against that of the Government in refusing a waiver to the particular alien applicant, according to some as yet undetermined standard." *Id.* at 769, 92 S.Ct. 2576. The Court elected to resolve the case on a more limited and practical basis: because the government had given a "facially legitimate and bona fide reason" for the denial, no further review was necessary or appropriate. *Id.* at 770, 92 S.Ct. 2576.

A distinction between an original denial decision and a later discretionary refusal to grant a waiver is not inherently implausible. For example, it could conceivably be a feature of a procedure that provided disappointed visa applicants an opportunity for some limited review. Congress might have made decisions by consular officers granting or denying visas final— simply in service of administrative finality—but also have permitted review when the Attorney General turned down a waiver recommendation made by the Secretary of State. At the first level of a possible two-level system the consular officer would simply measure the visa application against the statutory exclusions and act accordingly; if the applicant was excluded under § 1182(a), no visa would issue and that would be that. Even the Secretary of State would be, as she is, excluded from having a say in the ordinary course. 8 U.S.C. § 1104(a). However, if the Secretary makes a recommendation to the Attorney General that exclusion be waived, *id.* § 1182(d)(3)(A), a second level of consideration of the visa application is initiated that itself represents a departure from the simple ordinary consular administrative course.

■ One might not regard it a significant departure from the doctrine of *consular* nonreviewability to permit judicial review of the Attorney General's discretionary disposition of the Secretary's discretionary recommendation for a waiver. The doctrine is at its apogee when all that is sought to be questioned is an original administrative denial. But when the government itself treats the original administrative denial as not necessarily final, as where the Secretary of State recommends waiver of ineligibility, then to permit an applicant some limited review of the government's decision-making might not be inconsistent with the core of the doctrine of consular nonreviewability. But simply because such an arrangement is plausible does not mean it is a proper reading of the scope of *Mandel* review.

Not only did the *Mandel* Court not draw such a distinction between an original consular decision and a discretionary waiver decision, the difference is not one that was germane to the claim there, as it is not germane here. Like *Mandel*, this case is not about a visa applicant's personal interest in seeking to be admitted to the United States and what process might be available to him for review of a visa denial, but rather about the plaintiffs' First Amendment rights, as the Court put it in *Mandel*, to "hear, speak, and debate with Mandel in person" in the United States. *See* 408 U.S. at 762, 92 S.Ct. 2576. The plaintiffs' complaint here is that Habib was excluded "not for legitimate security reasons but rather because the government disfavors [his] politics," and that his exclusion has interfered with their ability to engage in activities protected by the First Amendment. (*See, e.g., id.* ¶¶ 51, 76, 83, & 88.) If their allegations are true factually and significant legally, it would not matter which government official, acting at what level of bureaucratic hierarchy, made the wrongful decision. In other words, a distinction between first-level administrative decision-making and second-level discretionary decision-making that might be appropriate in the context of an applicant's

hypothetical appeal of an initial visa denial through the bureaucracy does not have any significance in the context of the claim made by the plaintiffs here.

■ An illustration from a different context may be helpful. If a religious group claimed that it had been denied a zoning permit because the government disfavored the group's beliefs, it would not matter whether the final denial had been made by the building inspector or by the zoning board of appeals. What would be significant would be that the government had acted, through whomever, to infringe the group's First Amendment rights. Similarly, for purposes of "review" of the visa denial, if the government's decision infringed plaintiffs' First Amendment rights, it does not matter which official, whether the consular official or the Secretary of State, made the putatively unlawful decision. *Mandel* should not be read as narrowly as the defendants contend.

The second reason the defendants' argument is weak is that in *Adams*, the First Circuit applied the *Mandel* standard of review to an initial denial of a visa application by a consular official. *See* 909 F.2d at 645. As in Habib's case, Adams' application for a visa was denied by a consular official and the State Department declined to recommend waiver of ineligibility.[2] *Id.* at 647. It does not appear that the distinction between initial consular denials and later waiver denials now proposed by the defendants was raised in that case, but it is clear that the court of appeals applied the *Mandel* scope of review to a consular denial.

The defendants argue that the First Circuit mistakenly expanded *Mandel's* teaching in applying it to a first-level consular decision. For the reasons set forth above, I do not agree with the defendants' argument that *Mandel* does not apply to consular decisions. Even if I did agree with that proposition and thus disagree with *Adams*, it is not my place to "correct" the Circuit's "mistakes." I am bound to follow circuit precedent, whatever my views of its correctness. Accordingly, adherence to precedent is thus a further reason to reject the defendants' position.

Finally, the defendants are correct that the *Adams* court considered two since-repealed congressional enactments—the so-called "McGovern Amendment," 22 U.S.C. § 2691, and Section 901 of Public Law 100–204, 101 Stat. 1399, § 901(a) (1988)—when conducting the review it understood to be authorized (or required) under *Mandel*. *See* 909 F.2d at 646. Consideration of those enactments figured in the court's substantive analysis of the merits of the claim, but they were not crucial either to the exercise of subject matter jurisdiction or the existence of a cause of action. The inapplicability here of those former provisions has no significance.

## II. Rule 12(b)(1): Subject Matter Jurisdiction

■ In both *Adams* and *Allende*, the court of appeals applied what might be called *"Mandel* review" to determine whether the visa denial at issue had been supported by a "facially legitimate and bona fide reason." 909 F.2d at 650, 845 F.2d at 1116. In neither case is there any

---

2. The similarity actually goes deeper. In each case it appears that the consular officer consulted with superiors in Washington, D.C. before denying the application. *Compare Adams*, 909 F.2d at 645, *with* (Second Am. Compl. ¶ 50). The line between a discrete consular decision and a later discrete decision not to recommend a waiver is thus blurred. In both *Adams* and this case, taking the present plaintiffs' allegations as true, the decision seems to have been a joint one between the field and Washington. This makes the distinction the defendants would draw even more untenable.

direct discussion of the issue of subject matter jurisdiction, nor was there any explicit discussion of that question in *Mandel* itself.[3] To the extent there is a claim for review authorized under *Mandel*, it is plainly a claim that arises "under the Constitution, laws, or treaties of the United States," and is thus within the jurisdiction granted to the district courts under 28 U.S.C. § 1331.

The plaintiffs argue that a federal question is also presented because the relief sought is available under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). This argument is both dubious and duplicative. The APA precludes judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Further, the APA includes the reservation that "[n]othing herein ... affects other limitations on judicial review of the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." *Id.* § 702(1).

The agency action challenged here—Habib's visa denial—is generally precluded from judicial review by the long-standing doctrine of consular nonreviewability. As discussed above, *Mandel* carves out a limited exception when a citizen's constitutional rights are implicated. Assuming the plaintiffs qualify as persons "suffering legal wrong because of agency action," review of the denial of Habib's visa application is foreclosed except to the extent authorized by the *Mandel* exception to the doctrine of consular nonreviewability. *See id.* § 702; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (discussing the APA's standing requirements). Since "*Mandel* review" is within the Court's jurisdiction as a "federal question," it is unnecessary and redundant to characterize the claim as one for review under the APA (which would also be a "federal question" within the scope of 28 U.S.C. § 1331).

### III. Improper Parties

The plaintiffs have named Michael Chertoff, Secretary of the Department of Homeland Security, as a defendant. It does not appear that any act or omission to act on the part of the Secretary of the Department of Homeland Security is at issue in this case. The visa denial was by a consular official of the Department of State, and the Secretary of State declined to recommend a waiver of Habib's ineligibility. Accordingly, Chertoff will be dismissed as a party.

In addition, the organizations whose First Amendment rights are implicated are the proper plaintiffs in a claim for *Mandel* review. Habib was included in the complaint as a "symbolic plaintiff," (*see* Second Am. Compl. ¶ 2), a category unknown to the Federal Rules of Civil Procedure. As an alien who is a disappointed applicant for a visa, he has no claim for review of the denial. He will be dismissed as a party.

### IV. Other Pending Motions

The plaintiffs have also moved for summary judgment on the merits of their claim. They argue that because the gov-

---

**3.** The Court in *Mandel* was more concerned with whether the plaintiffs' described injury gave them a claim under the First Amendment. As the Court put it:

> The case, therefore, comes down to the narrow issue whether the First Amendment confers upon the appellee professors, because they wish to hear, speak, and debate with Mandel in person, the ability to determine that Mandel should be permitted to enter the country or, in other words, to compel the Attorney General to allow Mandel's admission.

*Mandel*, 408 U.S. at 762, 92 S.Ct. 2576.

ernment has failed to offer any explanation as to why Habib's visa application was denied, other than a bare reference to 8 U.S.C. § 1182(a)(3)(B), the government has failed to satisfy the "facially legitimate and bona fide reason" standard established by *Mandel.*

The defendants, in response, have moved to stay consideration of the motion for summary judgment until after the parties have had an opportunity to engage in discovery and develop a fuller factual record. I had announced at oral argument that if the defendants' motion to dismiss were denied in whole or part, I would grant the motion to stay consideration of the plaintiffs' summary judgment motion, and I do so now.

### V. Conclusion

The defendants' motion to dismiss (dkt. no. 16) is DENIED except to the extent that Michael Chertoff is dismissed as a defendant. Adam Habib is dismissed as a plaintiff.

The defendants' motion to stay the plaintiffs' motion for summary judgment (dkt. no. 22) is GRANTED. The plaintiffs' motion for summary judgment remains pending.

It is SO ORDERED.