**Wen Y. CHIANG, Plaintiff,**

v.

**Lynne SKEIRIK, Director of the National Visa Center, Condoleezza Rice, Secretary of State, and Michael Chertoff, Secretary of Homeland Security, Defendants.**

**Civil Action No. 07–10451–NMG.**

United States District Court,
D. Massachusetts.

Dec. 4, 2007.

Dean Carnahan, Law Offices of Dean Carnahan, Arlington, MA, for Plaintiff.

Anton P. Giedt, United States Attorney's Office, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this action arising from events surrounding an immigration petition, the plaintiff has filed two motions for a temporary restraining order and a motion for a preliminary injunction, and the defendant has filed a motion to dismiss for lack of subject matter jurisdiction.

### I. *Background*

On March 6, 2007, plaintiff, Wen Y. Chiang ("Chiang") filed a complaint against Lynne Skeirik, Director of the National Visa Center, Condoleezza Rice, Secretary of State, and Michael Chertoff, Secretary of Homeland Security. Chiang alleges two counts: Count I for negligence in the processing of his fiancé's immigration application, for which he seeks damages in the amount of $50,000, plus interest, costs and attorney's fees, and Count II for violation of 42 U.S.C. § 1983 by improperly processing his fiancé's application which, in turn, restricted Chiang's right to marry. Chiang seeks damages of $100,000, plus interest and costs for that alleged violation.[1]

---

1. Because Chiang is suing federal rather than state officials, his cause of action will be construed as brought under *Bivens v. Six Unknown Fed. Narcotics Officers*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), not § 1983, but this distinction does not affect the Court's analysis of the motions considered in this memorandum.

This case has had an unusual procedural and factual history. After Chiang filed the complaint, the government continued to process his fiancé's petition but eventually denied it. Throughout the application process, Chiang continued to make additional allegations against the government in the form of motions filed in this action. Despite the new allegations in intermittent pleadings and the fact that the government has considered and denied the fiance's immigration application, Chiang has not amended (or moved to amend) the complaint to clarify the relief he now seeks. Nevertheless, the pending motions will be resolved as follows.

## II.  *Factual and Procedural Chronology*

Because the factual and procedural histories of this case are intertwined, they are discussed together. On September 7, 2006, Chiang, a United States citizen, filed a petition with the United States Citizenship and Immigration Service ("USCIS") to have his fiancé, Wen Hua Zhang (who took the Anglicized name, "Amy"), classified as a nonimmigrant under the Immigration and Nationality Act, ("INA"), 8 U.S.C. § 1101(a)(15)(K)(i). Chiang sought to have Amy classified as an alien who seeks to enter the United States to conclude a valid marriage within 90 days. The USCIS approved Amy's Petition for Fiancee (form I–129F), on October 23, 2006, and an attached notice indicated that it would expire on February 23, 2007.

According to attorney Rachel Peterson ("Peterson"), of the U.S. Department of State Visa Office, Bureau of Consular Affairs, the National Visa Center ("NVC") sent Amy's case to the U.S. Consulate in Guangzhou, China ("the Consulate") on March 3, 2007, three days before Chiang filed the complaint in this case. The required namecheck for Amy was completed on April 24, 2007, and during that same month, Chiang and Amy participated in a marriage ceremony of some sort in China.

On June 21, 2007, the defendants answered the complaint. Six days later, Chiang moved for a preliminary injunction requesting that the Court order the defendants "forthwith" to schedule an interview with Chiang's fiancé and to grant her entry into the United States. It is undisputed that on or before July 13, 2007, the Consulate possessed Amy's completed application, including the DS–230 form.

On July 31, 2007, the Consulate informed Chiang that Amy would be interviewed on September 25, 2007. A few days later, the defendants filed a motion to dismiss this case for lack of subject matter jurisdiction. On September 25, 2007, Amy and Chiang went to the Consulate for the interview. Chiang alleges that several improprieties occurred during the interview, including that: 1) Chiang was not allowed to accompany Amy into the interview room, 2) Amy was the last person interviewed despite having a low number which meant that she waited for over five hours for an interview, 3) a consular official told Amy that he thought the photos of her and Chiang were taken over a short period despite the dates printed on them and 4) the consular official refused to return (and later denied having received) certain documents and photos.

At the conclusion of the interview on September 25, 2007, a consular official handed Amy a piece of paper informing her that her application for a visa had been denied based on the conclusion that she did not have a bona fide relationship with her petitioner, Chiang, and that her case would be returned to the USCIS for review.

Three days after the interview, Chiang filed a motion for a temporary restraining order. He asked the Court to enjoin the Consulate from transferring Amy's case to

the USCIS until further order of the Court. On October 4, 2007, this Court held a hearing on the motions for a temporary restraining order and preliminary injunction. It denied the temporary restraining order and ruled the motion for a preliminary injunction moot. On November 16, 2007 Chiang filed a second motion for a temporary restraining order which this Court denied without opinion three days later. This Memorandum & Order outlines the reasons for those rulings, resolves the motion to dismiss for lack of subject matter jurisdiction and orders other relief so as to clarify the remaining claims.

### III. *Analysis*

#### A. The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket No. 14)

■ Relying on the doctrine of consular non-reviewability, the government moves to dismiss this action for lack of subject matter jurisdiction. Although the doctrine of non-reviewability bars this Court from reviewing the reason for the denial of Amy's immigration petition, it does not bar review of the application process.

#### 1. Review of the Reasons for Denial of Amy's Petition

■ The doctrine of consular non-reviewability bars this Court from reviewing a consular's decision to exclude an alien from the United States. *Saavedra Bruno v. Albright,* 197 F.3d 1153, 1159–60, 1162–63 (D.C.Cir.1999). Some courts have held that denial of a visa is reviewable, however, in cases brought by U.S. citizens raising constitutional claims. *Abourezk v. Reagan,* 592 F.Supp. 880 (D.D.C.1984) *va-*

*cated on other grounds by Abourezk v. Reagan,* 785 F.2d 1043 (D.C.Cir.1986); *Am. Acad. of Religion v. Chertoff,* 463 F.Supp.2d 400, 416 (S.D.N.Y.2006)(finding jurisdiction where plaintiffs allege that the visa process was stalled in a manner violating their First Amendment rights). Other courts have found that the doctrine of non-reviewability extends to generalized allegations of due process violations. *De Castro v. Fairman,* 2006 WL 229022 (11th Cir.) *citing Burrafato v. United States Dep't of State,* 523 F.2d 554, 556 n. 2 (2d Cir.1975).[2]

The courts that have found subject matter jurisdiction to review the reasons for denial of visas based on constitutional violations look only to whether the government has a "facially legitimate and bona fide" reason for the denial. *Am. Acad. of Religion,* 463 F.Supp.2d at 418–19 (citing *Kleindienst v. Mandel,* 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)); *Abourezk,* 592 F.Supp. at 887. If the government presents such a reason, the "courts' role is at an end: they must defer to the Executive decision." *Abourezk,* 592 F.Supp. at 887.

■ At various times during the course of this litigation, Chiang has alleged that denial of Amy's petition violated three of his constitutional rights: 1) his right to marry and be with his wife, 2) his Seventh Amendment right to a jury trial and 3) his right to be free from discrimination based on country of origin. These constitutional claims do not overcome the doctrine of non-reviewability, however, because the government has presented two "facially legitimate and bona fide" reasons for the denial of Amy's application.

---

**2.** These courts have reviewed the visa decisions of consular officials as well as those made by the State Department and the Department of Homeland Security and conclud-

ed as to each that if the decision on a visa creates a constitutional question, the court has jurisdiction to ensure the constitutionality of the official's conduct.

First, as the government points out, Amy's status had changed by the time of her interview at the Consulate, giving the Consulate a legitimate reason to deny the visa. By Chiang's own admission, Amy and Chiang were married in China in April, 2007. Although Chiang now asserts that the April event was not a state-sanctioned marriage ceremony, at various points in this litigation, he has referred to his marriage to Amy, suggesting that she is now his wife.

Under the INA, § 1101(a)(15)(K)(i), pursuant to which Chiang sought Amy's visa, a non-immigrant is defined as the fiancé of a citizen of the United States "who seeks to enter the United States solely to conclude a valid marriage with the petitioner within 90 days after admission." Section 1184(d)(1) of the INA states that the visa shall be approved only if the petitioner and the beneficiary intend to marry and are legally able and actually willing to conclude a marriage within the United States. If Amy and Chiang were already married, Amy no longer qualifies for that kind of visa.

Second, the Consulate informed Amy that her visa application was denied based on the conclusion that she and Chiang did not have a bona fide relationship. In a declaration, Jeffrey Gorsky ("Gorksy"), the Chief of the Legal Advisory Opinions Division of the Visa Office, Bureau of Consular Affairs, U.S. Department of State, explains that, according to the notes on Amy's case, Chiang had in the past filed fiancé petitions for two other women from China. One he brought into the United States and later divorced in 2003. He filed an application on behalf of the other woman within the past two years, but it was later withdrawn and there were discrepancies with respect to the explanation. Based on such information, the Consulate determined that Chiang and Amy did not have a bona fide relationship and the application was denied. Adhering to the doctrine of consular non-reviewability, this Court will not second-guess that decision.

## 2. The Application Process

■ In Chiang's complaint, he does not object to the denial of the visa, which had not yet occurred at the time of filing, but to the conduct of federal officials during the application process. He claims negligence and violations of his constitutional rights and seeks damages. The doctrine of consular non-reviewability does not apply to claims of illegal behavior during the application process. It only restricts review of consular decisions. District courts have subject matter jurisdiction to review the lawfulness of the immigration application procedure. *See, e.g., Osunsanya v. United States Citizenship and Immigration Services*, 2007 WL 484864, *4 (D.Mass.2007).

### a. Jurisdiction over the constitutional claims

■ Although Chiang does not cite the source of this Court's purported jurisdiction, he would presumably argue that this Court can hear his constitutional claims under 28 U.S.C. § 1331, which gives district courts jurisdiction over "actions arising under the Constitution". Because Chiang's complaint alleges constitutional violations in the application procedure, this Court will exercise jurisdiction over those claims.[3]

3. The officers have qualified immunity against any constitutional claims but they lose that immunity if they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Neither party discusses qualified immunity in his/their brief,

### b. Jurisdiction over the negligence claims

■ Chiang offers no basis for jurisdiction as to his negligence claims, perhaps because there is none. Under the Federal Tort Claims Act ("FTCA"), the United States is the only proper defendant to a negligence claim arising from acts or omissions of its employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). Moreover, when an employee so acts, the FTCA provides the exclusive remedy for his or her tortious conduct. *Id.* Consequently, federal employees are absolutely immune from suit for torts committed within the scope of their employment. *Id.; Aversa v. United States,* 99 F.3d 1200, 1203 (1st Cir.1996).

The negligent acts Chiang alleges all occurred in the context of processing Amy's visa application and therefore were acts within the scope of the defendants' employment. Accordingly, their motion to dismiss as to the negligence claim will be allowed.

In summary, to the extent that Chiang seeks review of the reasons for the Consulate's denial of his fiancé petition or asserts negligence claims against the individual officers, the government's motion to dismiss for lack of subject matter jurisdiction will be allowed. The government's motion to dismiss with respect to Chiang's constitutional claims in the context of the application process will be denied.

### B. Chiang's Motion for a Preliminary Injunction (Docket No. 11)

■ In his June 18, 2007, motion for a preliminary injunction, Chiang requests that the Court order the defendants "forthwith" to schedule an interview with Chiang's fiancé and grant her entry into the United States. Amy has already had

and thus the Court will not address that issue

her interview and the Consulate has denied her immigration petition. As a result, this motion is now moot.

### C. Chiang's Motion for a Temporary Restraining Order (Docket No. 20)

In his first motion for a temporary restraining order, Chiang argues that the defendants have violated his constitutional right to marry and be with his wife, his due process rights and his right to trial by jury. Chiang also contends that the defendants have violated the Administrative Procedure Act, 5 U.S.C. § 555(b) ("APA"), which requires an agency decision "within a reasonable time" and that the Consulate is discriminating against Amy on the basis of her country of origin in violation of 8 U.S.C. § 1152(a)(1) or because Chiang has filed the current lawsuit. Chiang claims that he will suffer irreparable injury if the TRO is not granted.

#### 1. Legal Standard

■ To obtain a temporary restraining order (or a preliminary injunction), the plaintiff must demonstrate: 1) a substantial likelihood of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable balance of hardships, and 4) a fit (or lack of friction) between the injunction and the public interest. *Nieves–Márquez v. Puerto Rico,* 353 F.3d 108, 120 (1st Cir.2003) (citation omitted). Likelihood of success on the merits is the critical factor in the analysis. *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993) (citations omitted).

#### 2. Likelihood of Success on the Merits

As a preliminary matter, Chiang, in his complaint, seeks money damages under different theories of liability than those

at this time.

raised in his motion for a temporary restraining order. Success on the merits, therefore, will be analyzed only under those theories raised in the motion. Moreover, an order preventing the Consulate from returning the application to USCIS is appropriate only if either the act of the return is unlawful or denial of his fiancé's visa application was improper. As discussed above, this Court does not have subject matter jurisdiction to review the Consulate's reasons for denying the petition because the government has presented a "facially legitimate and bona fide reason" for the denial. Consequently, Chiang's only likelihood of success arises from his allegations relating to the processing of the application.

■ With regard to the application process, Chiang argues that the defendants have violated the APA and his right to Due Process. Because the Consulate denied the visa a little over one year after Amy applied, a decision was made within a reasonable time. Consequently, the APA claim has little chance of success. The due process allegations are also unlikely to succeed because they are vague and appear to affect Amy rather than Chiang. Moreover, although some of the alleged occurrences at the Consulate interview may have been objectionable, they do not rise to the level of due process violations.

Because the plaintiff lacks a likelihood of success on the merits, his motion for a temporary restraining order was denied.

**D. Chiang's Second Motion for a Temporary Restraining Order (Docket No. 24)**

■ In Chiang's second motion for a temporary restraining order, he argues that 1) his marriage ceremony in China was invalid and therefore Amy is still his fiancé, 2) the affidavit of Gorsky is misleading with respect to Chiang's prior petitions, 3) the Consulate's actions violated 22 C.F.R. § 42.62 and 9 FAM 42.62 and 4) the Consulate's actions in absconding with Amy's papers was an illegal seizure, giving rise to *Bivens* liability.

None of these new allegations improve Chiang's likelihood of success on the merits. First, although the marriage ceremony may not have been legally valid, Chiang described the ceremony as a marriage and Amy presented photographs of the event to the Consulate official, indicating that she and Chiang were then married. Second, as to the Gorsky affidavit, although some of the dates in it may have been inaccurate or misleading, the fact remains that Chiang has filed fiancé petitions for two other women, one of whom he divorced in 2003 and one whose application was submitted and then withdrawn within the past two years. It was those facts which led the Consulate to doubt the bona fide nature of the relationship between Chiang and Amy and provided a legitimate reason for the denial of her application.

Third, the regulations that Chiang cites as having been violated by the Consulate require consular officials to make visa determinations based on the application, relevant documentation and answers provided by the applicant and to make every effort to conduct visa interviews fairly and sympathetically. The only support Chiang provides for his claim that the Consulate failed to follow those procedures is vague and speculative. Without more, Chiang cannot demonstrate a reasonable likelihood of success.

Finally, success on a *Bivens* action based on the alleged seizures, if they occurred, would not affect the propriety of the denial of the visa and the transfer of Amy's application to the USCIS. Chiang does not allege that the Consulate based its denial of Amy's petition on the contents

of documents illegally seized. In fact, Chiang admits that Amy gave the Consulate the documents for official use in connection with her application. Any illegal retention of the documents may constitute a claim separate and apart from the decision to deny the visa. As a result, the second motion for a temporary restraining order was denied.

### E. Requirement to File Amended Complaint

Due to the unusual procedural history of this case, the events that allegedly occurred in the processing of Amy's application since the filing of the original complaint and this Court's decision to dismiss substantial portions of the complaint for lack of subject matter jurisdiction, the plaintiff will be required to file an amended complaint stating any remaining justiciable claims he possesses.

### ORDER

In accordance with the foregoing:

1) the defendants' motion to dismiss for lack of subject matter jurisdiction (Docket No. 14) is, to the extent that Chiang seeks review of the reasons for the Consulate's denial of his fiancé's petition or asserts negligence claims against the individual officers, **ALLOWED,** but is otherwise **DENIED,**

2) the plaintiff's motion for a preliminary injunction (Docket No. 11) is **DENIED** as moot,

3) the plaintiff's motion for a temporary restraining order (Docket No. 20) is **DENIED,**

4) the plaintiff's second motion for a temporary restraining order (Docket No. 24) is **DENIED,** and

5) in light of the changed circumstances since the filing of the original complaint, the plaintiff is directed to file, on or before January 18, 2008, an amended complaint, restating any justiciable claims not dismissed herein. In default of such filing, the complaint will be dismissed in its entirety.

**So ordered.**