# United States Court of Appeals

## For the First Circuit

No. 08-2105

WEN Y. CHIANG,

Plaintiff, Appellant,

v.

LYNN SKEIRIK, in her official capacity as Director of the
National Visa Center; CONDOLEEZZA RICE, in her official capacity
as Secretary of State; MICHAEL CHERTOFF, in his official capacity
as Secretary of Homeland Security; BRIAN FERINDEN, in his
official capacity as Vice General Consul in Guangzhou, China; and
the UNITED STATES OF AMERICA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before
Boudin, Selya, and Dyk,[*] Circuit Judges.

Dean Carnahan for appellant.
Anton P. Giedt, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellees.

September 28, 2009

---

[*]Of the Federal Circuit, sitting by designation.

**DYK**, <u>Circuit Judge</u>. Wen Y. Chiang ("Chiang") appeals from a district court decision in an immigration case, dismissing his amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). We affirm.

## I.

We recite the complex and protracted proceedings in the district court only to the extent relevant to the appeal.

Chiang, a U.S. citizen residing in Arlington, Massachusetts, sought a fiancée visa to permit his fiancée, Wen Hua Zhang (who took the Anglicized name "Amy"), to come to the United States so that the two could be married. <u>Chiang</u> v. <u>Skeirik</u>, No. 07-10451, slip op. at 2 (D. Mass. June 11, 2008). Under 8 U.S.C. § 1101(a)(15)(K)(i), a visa may be granted to a non-immigrant alien who "is the fiancée or fiancé of a citizen of the United States . . . and who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission."

The regulations provide a two-step process for securing such a visa. First, the United States citizen must file a petition with the Secretary of Homeland Security, through the United States Citizenship and Immigration Service ("USCIS"), for such a visa.

See 8 U.S.C. § 1184(d)(1).[1]  Second, if the petition is granted, the visa must also be approved by a consular official in the country in which the alien resides.  See id.; 8 U.S.C. § 1201(a)(1).  Chiang filed a petition with USCIS on September 7, 2006.

On October 23, 2006, the USCIS approved Chiang's petition for a fiancée visa.  On March 3, 2007, Amy's case was sent to the U.S. Consulate in Guangzhou, China ("the consulate") for further consideration.

On March 6, 2007, Chiang filed the pro-se complaint in this case.  The complaint sought to compel USCIS to act promptly on the visa application and sought damages on various theories.  Soon thereafter, sometime during the month of April 2007, Chiang and Amy participated in a marriage ceremony of some sort in China.  Chiang

---

[1]     8 U.S.C. § 1184(d)(1) provides:

A visa shall not be issued under the provisions of section 1101(a)(15)(K)(i) of this title until the consular officer has received a petition filed in the United States by the fiancée [or] fiancé of the applying alien and approved by the Secretary of Homeland Security. . . .  It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival . . . .

v. <u>Skeirik</u>, No. 07-10451, slip op. at 3 (D. Mass. June 11, 2008).

On September 25, 2007, the consulate interviewed Amy. Chiang alleges that several improprieties occurred during the interview. These improprieties include: making Amy "wait until she was the last person interviewed"; not allowing Chiang to accompany Amy into the interview room; taking Chiang's file of documents and photographs and refusing to return them; and "acting in [a] concerted effort to deny Chiang's constitutional rights." At the conclusion of the interview, a consular official handed Amy a piece of paper informing her that her application for a visa had been denied based on the conclusion that she did not have a bona fide relationship with Chiang. This determination was largely based on the fact that Chiang had previously filed applications for two other Chinese women to come to the United States on fiancée visas. The consular official also advised Chiang that Amy's case would be returned to USCIS for review.

On December 4, 2007, the district court, finding a lack of subject matter jurisdiction, dismissed Chiang's complaint "to the extent that Chiang [sought] review of the reasons for the Consulate's denial of his fiancé's petition. . . ." <u>Chiang</u> v. <u>Skeirik</u>, 529 F. Supp. 2d 166, 174 (D. Mass. 2007). The district court directed Chiang to file an amended complaint on or before January 18, 2008. <u>Id.</u> Chiang then filed an amended complaint (hereinafter "first amended complaint"), which asserted various

counts against various government officials in their official capacities and against the United States.

Four counts of the first amended complaint are at issue in this appeal. Count I was a monetary claim against the United States, which Chiang described as a Bivens[2] claim, alleging that the employees of the consulate violated Chiang's Fifth Amendment rights by denying him due process during the processing of the visa application. Count II was also for money damages against the United States and was also described as a Bivens claim, alleging that the employees at the consulate violated Chiang's Fourth Amendment rights by unlawfully seizing his photographs and documents. Count III alleged that various government officials in their official capacities, the consulate, and the United States violated Chiang's Seventh Amendment right to a jury trial because the consulate denied the visa application in retaliation for filing this lawsuit. Count III sought money damages and other relief. Count IV alleged that processing delays and other actions of the consulate, "apart from the decision to deny the visa application," violated Chiang's constitutional right to marry and sought damages and other relief against the United States.

Following return of the petition from the consulate, on May 1, 2008 the USCIS denied Chiang's petition. The USCIS did not base its decision on a lack of a bona fide relationship (the ground

_____

[2] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

- 5 -

for the consulate action). Instead, the USCIS concluded that Amy and Chiang were married in China and that Amy was therefore no longer eligible for a fiancée visa.

On June 11, 2008, the district court denied a preliminary injunction to require the issuance of the visa, finding that even under the assumption that the district court had jurisdiction to review the denial of the visa, there was not a likelihood of success on the merits. Chiang then filed an interlocutory appeal to this court challenging the denial of the preliminary injunction. Chiang subsequently dismissed that appeal.

The government then moved to dismiss the first amended complaint. On July 3, 2008, a magistrate judge issued a Report and Recommendation recommending that the district court grant the defendants' motion. Specifically, as pertinent to this appeal, the magistrate judge recommended dismissal of the first amended complaint: (1) for failure to state a proper claim for money damages against the United States; (2) for failure to state a claim because the complaint failed to allege a violation of Chiang's constitutional rights; (3) because the doctrine of consular nonreviewability precluded review of the denial of the visa; and (4) because the district court did not have jurisdiction over the USCIS denial because it was done for a "facially legitimate and bona fide" reason. Chiang v. Skeirik, No. 07-10451, slip op. at 15-16 (D. Mass. July 3, 2008).

On July 17, 2008, Chiang filed a motion for leave to file

a second amended complaint and filed objections to the magistrate judge's Report and Recommendation.  In the proposed second amended complaint, Chiang sought to add <u>Bivens</u> claims against Brian Ferinden (the Vice General Consul in Guangzhou, China), individually, and to add <u>Bivens</u> claims against two unknown consular officials.

On August 7, 2008, the district court adopted the Report and Recommendation of the magistrate judge.  On August 10, 2008, Amy gave birth to a son, who now resides in the United States with Chiang.  On August 11, 2008, the district court denied Chiang's motion to amend his first amended complaint "[b]ecause the proposed amendment would be futile and Plaintiffs do not get 'repeated bites at the apple.'"  On August 14, 2008, the district court dismissed the case pursuant to the Report and Recommendation of the magistrate judge.

Chiang timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Chiang challenges the dismissal of his first

amended complaint and denial of leave to amend.[3]  We review the court's dismissal, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), de novo.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009); Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

## A.

The district court had jurisdiction over Chiang's non-monetary constitutional claims pursuant to 28 U.S.C. § 1331, which gives the district courts jurisdiction over civil cases arising under the Constitution, laws, or treaties of the United States.  See Burrafato v. U.S. Dep't of State, 523 F.2d 554, 556 (2nd Cir. 1975) (stating that "the federal courts clearly had jurisdiction" over immigration disputes "grounded on an alleged violation of First Amendment rights of American citizens"); see also Am. Acad. Of Religion v. Chertoff, 463 F. Supp. 2d 400, 416 (S.D.N.Y. 2006); Abourezk v. Reagan, 592 F. Supp. 880 (D.D.C. 1984), vacated on other grounds, 785 F.2d 1043 (D.C. Cir. 1986);.

Chiang argues that his right to marry was violated by the denial of the visa, the processing delays, and other actions of the

---

[3]  Chiang also challenges the denial of a preliminary injunction.  The United States asserts that Chiang's voluntary dismissal of his interlocutory appeal of the denial of the preliminary injunction bars a challenge to the injunctive order as part of the appeal from the final order.  In view of our decision that the first amended complaint was properly dismissed, we need not decide whether this court has jurisdiction to review the preliminary injunction.  See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (court may decline to reach subject matter jurisdiction if claim is moot).

consular officials.  Even assuming that a United States citizen has a constitutional right to marry a foreign national, Chiang has always been free to marry Amy in China,[4] in a third country, or, possibly, in the United States by proxy.[5]  There is no authority supporting the view that a United States citizen has a

---

[4]    See Consulate General of the United States, Guangzhou, China, Getting Married in China, http://guangzhou.usembassy-china.org.cn/information_about_getting_married_in_china2.html.

[5]    As suggested by guidance in the U.S. Department of State Foreign Affairs Manual 40.1 N1.3, proxy marriages can sometimes be acceptable in immigration cases:

> 9 FAM 40.1 N1.3-1 Consummated [proxy marriage]
> For the purpose of issuing an immigrant visa (IV) to a "spouse", a proxy marriage that has been subsequently consummated is deemed to have been valid as of the date of the proxy ceremony.  Proxy marriages consummated prior to the proxy ceremony cannot serves [sic] as a basis for the valid marriage for immigration purposes.
>
> 9 FAM 40.1 N1.3-2 Unconsummated [proxy marriage]
> A proxy marriage, that has not been subsequently consummated, does not create or confer the status of "spouse" for immigration purposes pursuant to INA 101(a)(35).  A party to an unconsummated proxy marriage may be processed as a nonimmigrant fiancé(e).  A proxy marriage celebrated in a jurisdiction recognizing such marriage is generally considered to be valid, thus, an actual marriage in the United States is not necessary if such alien is admitted to the United States under INA provisions other than as a spouse.

9 U.S. Dep't of State Foreign Affairs Manual 40.1 N1.3 (2008) (available at http://www.state.gov/documents/organization/86920.pdf).

constitutional right to engage in a marriage ceremony in the United States at which the foreign national is present. The district court did not err in concluding that Chiang had failed to state a claim based on this theory.

Chiang also claims that the denial of the visa was improper because his traditional marriage to Amy in China is not regarded as legal by the USCIS for other immigration purposes, and the USCIS thus could not use the existence of the marriage as a ground for denying a fiancée visa. Under the doctrine of consular nonreviewability, in immigration disputes nonconstitutional issues are generally outside the jurisdiction of the courts.[6] "[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950). In particular, "when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will [not] look behind the exercise of that discretion." Kleindienst v. Mandel, 408 U.S. 753, 770 (1972).

---

[6]     Adams v. Baker, 909 F.2d 643, 649 (1st Cir. 1990) ("[I]n the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State, 8 U.S.C. § 1104(a)(1), and are similarly not reviewable by courts."); see Saavedra Bruno v. Albright, 197 F.3d 1153, 1159-60, 1162-63 (D.C. Cir. 1999) ("The doctrine [of consular nonreviewability] holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise.").

In this case the Executive presented a "facially legitimate and bona fide" reason for the denial. The USCIS simply said that no visa could issue since the parties were already married. District courts have no authority or jurisdiction to go behind the facial reason to determine whether it is accurate—for example, because the marriage would not be recognized. Thus, Chiang has failed to state a plausible entitlement to relief and the district court did not err in dismissing this claim under Rule 12(b)(6).[7]

**B.**

In the first amended complaint, Chiang asserted two claims for money damages against the United States. He asserts on appeal that the district court erred in dismissing these claims because they were proper Bivens claims. "The Bivens doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008) (emphasis added). "The purpose of Bivens is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v.

---

[7] Chiang alternatively argues that the decision by the consulate, that Chiang and Amy have no "bona fide relationship," was unsupported by the facts. Under the doctrine of consular nonreviewability, the courts similarly have no jurisdiction to review this finding of fact. Chiang's claim that his Seventh Amendment right to a jury trial was somehow violated because the consulate denied the visa application in retaliation for filing this lawsuit is frivolous.

Malesko, 534 U.S. 61, 70 (2001).

Chiang failed to name any officers in their individual capacities in his first amended complaint. A Bivens claim does not lie against the United States. McCloskey v. Mueller, 446 F.3d 262, 271-72 (1st Cir. 2006) (The Bivens "doctrine does not override bedrock principles of sovereign immunity so as to permit suits against the United States, its agencies, or federal officers sued in their official capacities."). The district court did not err in dismissing Counts I-IV under Rule 12(b)(1).

## C.

Finally, Chiang asserts that the district court improperly denied his motion to file a second amended complaint. We review the district court's denial of the motion for leave to amend for abuse of discretion. Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009). This court defers to the district court's denial of a motion for leave to amend if any adequate reason for the decision is apparent in the record. ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). The district court refused Chiang's motion for leave to amend "because the proposed amendment would be futile." Chiang v. Skeirik, No. 07-10451, Electronic Order (D. Mass. Aug. 11, 2008) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). Chiang argues that his "motion to amend his Amended Complaint would have added the correct parties" as defendants to the Bivens claims. Pl.-Appellant Br. 19. As stated previously, Chiang sought to add

claims against Brian Ferinden (the Vice General Consul in Guangzhou, China), individually, and add claims against two unknown consular officials (presumably in their individual capacities). Chiang alleges that Brian Ferinden "refused to assist Chiang" when Chiang complained to Ferinden about the seizure of all of his documents. Id. at 23. Chiang alleges that one of the two unknown consular officials made Amy wait "until she was the last person interviewed and thus was in part of the concerted and joint actions to deprive Chiang of his constitutional rights." The other consular official allegedly "unlawfully took Chiang's entire file, which was not needed for any legitimate consular activities" and refused to return it.

Assuming that the specific allegedly wrongful acts occurred, none of them supports a Bivens claim. While the appropriation of Chiang's papers might conceivably support a claim for monetary recovery on some sort of takings theory (if the appropriation was authorized) or an order directing the return of the papers (if the appropriation was unauthorized), we fail to see how the appropriation of Chiang's papers—whether authorized or unauthorized—could support a Bivens claim. See Wilkie v. Robbins, 551 U.S. 537, 555 (2007) (no Bivens claim where alternative remedies available). Likewise, Chiang's conclusory statements that Ferinden and two unknown consular officials made a joint and concerted effort to violate Chiang's constitutional rights do not raise a viable claim of a constitutional violation. As this court

- 13 -

noted in <u>Maldonado</u> v. <u>Fontanes</u>, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 568 F.3d 263, 268 (1st Cir. 2009) (quoting <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).

Here the record shows that the proposed amendment would have been futile, because the proposed amendment would still not state a proper <u>Bivens</u> claim.[8] Thus, the district court did not abuse its discretion when it denied Chiang's motion for leave to file his second amended complaint.

**III.**

For the foregoing reasons, we affirm the dismissal of Chiang's complaint.[9]

<u>Affirmed.</u>

---

[8] In addition, the amendment would have been futile because Chiang never indicated any way in which the District Court of Massachusetts could acquire jurisdiction over the defendants whom he proposed to add.

[9] On June 29, 2009, the USCIS in Vermont both granted Chiang's motion to reopen and reconsider his petition for a fiancée visa and approved that petition. This approval does not affect the existence of a case or controversy because the defendants urge that the visa petition was granted in error and that the granted visa petition will soon be rescinded.