**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FAUZIA DIN,<br>                   *Plaintiff-Appellant*,<br><br>v.<br><br>JOHN F. KERRY,* Secretary of State;<br>JANET A. NAPOLITANO, Secretary of<br>Homeland Security; ERIC H.<br>HOLDER, JR., Attorney General,<br>Attorney General of the United<br>States; RICHARD OLSON,<br>Ambassador of the United States<br>Embassy, Islamabad, Pakistan;<br>CHRISTOPHER RICHARD, Consul<br>General of the Consular Section at<br>the United States Embassy,<br>Islamabad, Pakistan; JAMES B.<br>CUNNINGHAM, Ambassador of the<br>United States Embassy, Kabul,<br>Afghanistan,<br>            *Defendants-Appellees*. | No. 10-16772<br><br>D.C. No.<br>3:10-cv-00533-<br>MHP<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, Senior District Judge, Presiding

---

    * John F. Kerry, Richard Olson, and James B. Cunningham are
substituted for their predecessors pursuant to Fed. R. App. P. 43(c)(2).

Argued and Submitted July 18, 2012
San Francisco, California

Filed May 23, 2013

Before: Richard R. Clifton and Mary H. Murguia,
Circuit Judges, and Raner C. Collins, District Judge.[**]

Opinion by Judge Murguia;
Dissent by Judge Clifton

---

## SUMMARY[***]

---

### Immigration

The panel reversed the district court's order granting the Government's motion to dismiss, on the basis of consular nonreviewability, United States citizen Fauzia Din's claims for a writ of mandamus directing the Government to adjudicate the visa application she filed on behalf of her husband Kanishka Berashk and for a declaratory judgment under the Administrative Procedure Act.

The panel concluded that the Government's citation to 8 U.S.C. § 1182(a)(3)(B), in the absence of any allegations of proscribed conduct, was not a facially legitimate reason to

---

[**] The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

deny Berashk's visa, and held that the Government did not put forth a facially legitimate reason to deny it. The panel also concluded that Din had standing to seek a declaratory judgment that the visa denial notice provision under § 1182(b)(3) was unconstitutional as applied to her.

Dissenting, Judge Clifton would find that the Government is specifically not required to provide information about a visa denial based on concerns for national security or terrorism. Judge Clifton wrote that basing the denial of the application on the statute provided a lawful reason for denying it.

## COUNSEL

Heidi C. Larson Howell (argued) and Geoffrey D. DeBoskey, Sidley Austin LLP, Los Angeles, California; and Sin Yen Ling, Asian Law Caucus, San Francisco, California, for Appellant.

Stacey Ilene Young (argued), Trial Attorney, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Appellees.

## OPINION

MURGUIA, Circuit Judge:

United States citizen Fauzia Din filed a visa petition on behalf of her husband Kanishka Berashk, a citizen and resident of Afghanistan. Nine months later, the visa was denied. Consular officials informed Din and Berashk only

that the visa had been denied under 8 U.S.C. § 1182(a)(3)(B), a broad provision that excludes aliens on a variety of terrorism-related grounds. The district court granted the Government's motion to dismiss on the basis of consular nonreviewability, concluding that the Government put forth a facially legitimate and bona fide reason for the visa denial, in accordance with *Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008). We disagree. Because the Government has not put forth a facially legitimate reason to deny Berashk's visa, we reverse and remand for further proceedings.

## I.  Background

The following facts are taken from Din's complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (accepting "all factual allegations in the complaint as true" when reviewing an order granting a motion to dismiss). From 1992 to 2003, Din's husband, Berashk, worked as a payroll clerk for the Afghan Ministry of Social Welfare. Since the Taliban controlled Afghanistan from 1996 to 2001, Berashk's employment necessarily included work for the Taliban government. Since 2003, Berashk has worked as a clerk in the Afghan Ministry of Education, where he performs low-level administrative duties, including processing paperwork.

In September 2006, Din and Berashk married. In October of the same year, Din filed a visa petition on Berashk's behalf. On February 12, 2008, United States Citizenship and Immigration Services ("USCIS") notified Din that the visa petition was approved. Several months later, the National Visa Center informed Din that it completed processing the visa and scheduled a visa interview for Berashk at the Embassy in Islamabad, Pakistan. The interview took place as scheduled on September 9, 2008. Berashk answered all

questions truthfully, including inquiries about his work for the Afghan Ministry of Social Welfare during the period of Taliban control and about the difficulty of life under that regime. The interviewing consular officer told Berashk he should expect to receive his visa in two to six weeks. The officer gave Berashk a form to submit at the Kabul Embassy, which he submitted with his passport upon returning to Afghanistan.

Almost nine months later, on June 7, 2009, following several phone calls to the Embassy from both Din and Berashk, Berashk received a Form 194 letter informing him that his visa had been denied under Section 212(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a). The letter also stated that there was "no possibility of a waiver of this ineligibility." On July 11, 2009, Berashk sent an email to the Islamabad Embassy requesting clarification as to the reason his visa had been denied. On July 13, 2009, the Embassy emailed a response, stating the visa had been denied under INA § 212(a)(3)(B), 8 U.S.C. § 1182(a)(3)(B), a section of the INA that lists a wide variety of conduct that renders an alien inadmissible due to "terrorist activities." The email added that "[i]t is not possible to provide a detailed explanation of the reasons for the denial," citing INA § 212(b)(2), 8 U.S.C. §§ 1182(b)(2)–(3), which makes inapplicable the requirement that the aliens receive notice of the reason for denials involving criminal or terrorist activity.

Din then obtained pro bono counsel and made several inquiries about the visa denial. Din's counsel sent a letter to the Immigrant Visa Unit of the Islamabad Embassy requesting reconsideration, or, alternatively, a statement of facts in support of the Government's position that Berashk

was inadmissible. The Embassy responded with an email again referring only to INA § 212(a)(3)(B). Counsel subsequently sent a similar letter to the Office of Visa Services at the State Department. Following several other unsuccessful attempts to contact different State Department officials, counsel received an additional email again stating that the visa had been denied under Section 212(a)(3) and that a more detailed explanation for the refusal was not possible.

In late 2009, Din attempted to obtain answers directly by traveling from the United States to the Kabul Embassy and then the Islamabad Embassy. Officials at both embassies declined to provide her with a more specific explanation of the visa denial.

Din then initiated this action, asserting three claims for relief: (1) a writ of mandamus directing defendants to lawfully adjudicate Berashk's visa application; (2) a declaratory judgment that 8 U.S.C. § 1182(b)(3), waiving the visa denial notice provisions for aliens deemed inadmissible under terrorism grounds, is unconstitutional as applied to Din; and (3) a declaratory judgment that defendants are in violation of the Administrative Procedure Act. The district court granted the Government's motion to dismiss, concluding that Din failed to state a claim because the doctrine of consular nonreviewability barred adjudication of her first and third claims. The district court also dismissed Din's second claim, concluding that Din did not have standing to challenge the visa denial notice provision.

## II. Standard of Review

We review de novo the district court's order granting a motion to dismiss. *Knievel*, 393 F.3d at 1072. When ruling

on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Id.* To survive dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. Discussion

## A. Consular nonreviewability and the *Mandel* exception

We begin with the doctrine of consular nonreviewability. An alien has "no constitutional right of entry" to the United States. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). The Supreme Court "without exception has sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Id.* at 766 (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). Accordingly, "[f]ederal courts are generally without power to review the actions of consular officials." *Rivas v. Napolitano*, 677 F.3d 849, 850 (9th Cir. 2012) (citing *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986)).

However, we have recognized a limited exception to the doctrine of consular nonreviewability. When the denial of a visa implicates the constitutional rights of an American citizen, we exercise "a highly constrained review solely to determine whether the consular official acted on the basis of a facially legitimate and bona fide reason." *Bustamante*, 531 F.3d at 1060. This right to review arises from the Supreme Court's holding in *Mandel*, in which U.S. citizen professors asserted a First Amendment right to "receive information and ideas" from an alien. 408 U.S. at 770. The

*Mandel* Court held that when the Government denies admission "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." 408 U.S. at 762. Since *Mandel*, our Court and several of our sister circuits have exercised jurisdiction over citizens' challenges to visa denials that implicate the citizens' constitutional rights. *Bustamante*, 531 F.3d at 1059; *see also Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 125 (2d Cir. 2009); *Adams v. Baker*, 909 F.2d 643, 647–48 (1st Cir. 1990); *Abourezk v. Reagan*, 785 F.2d 1043, 1075 (D.C. Cir. 1986). Courts review the denials for "a facially legitimate and bona fide reason." *Bustamante*, 531 F.3d at 1062.

In *Bustamante*, we recognized that a citizen has a protected liberty interest in marriage that entitles the citizen to review of the denial of a spouse's visa. 531 F.3d at 1062.[1]

---

[1] The Government's contention that *Bustamante* is not good law is meritless. First, the Government argues that the text of the INA, as supported by its legislative history, precludes judicial review of consular decisions. This argument is irrelevant to the holding of *Bustamante*, which conditions judicial review on the constitutional rights of citizens, not an interpretation of immigration statutes. *See* 531 F.3d at 1062 ("Presented with a procedural due process claim by a U.S. citizen, we therefore consider the Consulate's explanation for the denial of [the] visa application pursuant to the limited inquiry authorized by *Mandel*."). Second, according to the Government, *Bustamante* is predicated on a liberty interest in the ability to live in the United States with an alien spouse, and because this right has been elsewhere repudiated, *Bustamante* is in conflict with Circuit precedent and should not be followed. The Government misreads *Bustamante*; nowhere does the case mention the right of an alien spouse to live in the United States. Rather, it explains that a citizen spouse's right to judicial review is based on the more general

We therefore consider whether the reason provided by the consular officials for the denial of Berashk's visa is "facially legitimate and bona fide." *Id.* This inquiry is extremely narrow. Once the Government offers a facially legitimate and bona fide reason for the denial, courts "have no authority or jurisdiction to go behind the facial reason to determine whether it is accurate." *Chiang v. Skeirik*, 582 F.3d 238, 243 (1st Cir. 2009).

There is little guidance on the application of the "facially legitimate and bona fide" standard. *See Marczak v. Greene*, 971 F.2d 510, 517 (10th Cir. 1992) ("Because the 'facially legitimate and bona fide' standard is used relatively infrequently, its meaning is elusive.") (quoting *Azizi v. Thornburgh*, 908 F.2d 1130, 1133 n.2 (2d Cir. 1990)).[2]  We agree with the Second Circuit that "the identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason." *Am. Acad.*, 573 F.3d at 126 (quoting 8 U.S.C. § 1201(g)). This is consistent with

---

right to "[f]reedom of personal choice in matters of marriage and family life." *Id.* We have neither the power to, nor the interest in questioning *Bustamante*'s authority. *See Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir. 1984) (only en banc decisions, Supreme Court decisions, or subsequent legislation overrule the decisions of prior panels).

[2] The dearth of cases explaining the "facially legitimate and bona fide" requirement explains why we, and the dissent, cannot cite any authority conclusively resolving whether the Government's rationale is sufficiently detailed to constitute a "facially legitimate" basis. *See* Dissent at 27 (asserting, without citation, that "[t]here is nothing facially illegitimate in the identification of section 1182(a)(3)(B) as the basis for the denial of Berashk's application").

*Bustamante*, in which we stated that the visa applicant "was denied a visa on the grounds that the Consulate 'had reason to believe' that he was a controlled substance trafficker." 531 F.3d at 1062.

Accordingly, we must determine if the Government's citation to a broad section of the INA that contains numerous categories of proscribed conduct, without any assurance as to what the consular officer believes the alien has done, is also a facially legitimate reason. Because we conclude that the Government's position would eliminate the limited judicial review established by the Supreme Court in *Mandel* and recognized by this Court in *Bustamante*, and we find no authority to support eliminating this review, we conclude that it is not.

The first problem is that the Government has offered no reason at all for denying Berashk's visa; it simply points to a statute. While the statute might demonstrate that a particular reason is legitimate, in this case there are no factual allegations that would allow us to determine if the specific subsection of § 1182(a)(3)(B) was properly applied. Din alleges that neither she nor Berashk has any idea what Berashk could have done to be found inadmissible on terrorism grounds, and the Government provides no reason other than its citation to § 1182(a)(3)(B).

In this regard, Din and Berashk's case is distinguishable from *Bustamante* and other visa denial challenges by a citizen. In *Bustamante*, the visa applicant was informed that the consulate had reason to believe he was trafficking illegal drugs and therefore inadmissible, but that the evidence supporting this conclusion was secret. 531 F.3d at 1060. DEA officials later asked the applicant to become an

informant, stating that if he did, his visa problems "would go away." *Id.* at 1061. The applicant refused and his application was denied. In response to an inquiry from counsel for the Bustamantes, the consular official referenced a letter "written by the 'Resident Agent-in-Charge of our local Drug Enforcement Administration Office,' that contained 'derogatory information' to support the finding that there was reason to believe that Jose was a controlled substance trafficker." *Id.* We upheld the visa denial, noting that "the Bustamantes' allegation that Jose was asked to become an informant in exchange for immigration benefits fails to allege bad faith; if anything, it reflects the official's sincere belief that Jose had access to information that would be valuable in the government's effort to combat drug trafficking." *Id.* at 1063.

We specifically held, "Jose [Bustamante] was denied a visa on the grounds that the Consulate 'had reason to believe' that he was a controlled substance trafficker. This is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility. 8 U.S.C. § 1182(a)(2)(C)." 531 F.3d at 1062. The *reason* for exclusion in *Bustamante* was that "the Consulate 'had reason to believe' that he was a controlled substance trafficker." *Id.* The statute gave the reason legitimacy, but the statute standing alone was not the reason.

Other circuits reviewing a citizen's challenge to a visa denial have also relied on reasons for exclusion that contained some factual elements. For example, in *Adams*, the First Circuit observed that "[t]he evidence of Adams' involvement in the violent activities of the [Irish Republican Army], both as a policy maker and as a field commander, provides a 'facially legitimate and bona fide reason' for his exclusion." 909 F.2d at 649; *see also Allende v. Shultz*, 845 F.2d 1111,

1120 (1st Cir. 1988) (concluding that the speaking engagements Allende planned for her time in the United States were not a basis for exclusion because 8 U.S.C. § 1182(a)(27), prior to its repeal, excluded aliens seeking to engage in activities that would be harmful to the United States, and required an activity other than speech). The record here is completely void of any similar allegations in support of the Government's denial of Berashk's visa.

The first problem is compounded by the sweeping nature of the cited section of the INA. Section 1182(a)(3)(B) exceeds 1,000 words. It contains ten subsections identifying different categories of aliens who may be inadmissible for terrorism reasons.[3] The section defines "terrorist activities" with reference to six different subsections, containing different kinds of conduct. It defines "engage in terrorist activity" in seven subsections, some of which are divided into further subsections. The conduct described in § 1182(a)(3)(B) ranges from direct participation in violent terrorist activities to indirect support of those who participate in terrorist activities. The citation to § 1182(a)(3)(B) contrasts with the much narrower ground of inadmissibility at issue in *Bustamante*.

---

[3] The subsections cover aliens who: (1) have engaged in terrorist activities; (2) are now or will be engaged in terrorist activities; (3) have incited terrorist activities; (4) are representatives of terrorist organizations or other groups that espouse terrorism; (5) are members of a recognized terrorist organization; (6) are members of an informal terrorist organization; (7) endorse or espouse terrorist activity; (8) have received military-type training from or on behalf of a terrorist organization; (9) are the spouse or child of a person found inadmissible under the subsection; or (10) are officers, officials, representatives, or spokespersons of the Palestinian Liberation Organization. 8 U.S.C. § 1182(a)(3)(B).

It appears that, at a minimum, the Government must cite to a ground narrow enough to allow us to determine that it has been "properly construed." *See Am. Acad.*, 573 F.3d at 126 ("[T]he identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason. . . ."). The Government's citation here is so broad that we are unable to determine whether the consular officer "properly construed" the statute. Unlike the dissent, Dissent at 29–30, we are unwilling to assume that the statute has been properly construed without knowing *what* is being construed, let alone *how* it is being construed. By contrast, the Second Circuit analyzed three distinct issues of statutory construction in reviewing a challenge to a visa denial based on § 1182(a)(3)(B)(i)(I), one of the subsections that could be relevant here. *Am. Acad.*, 573 F.3d at 125–35. Given the breadth of the encompassed conduct and the sheer number of grounds of inadmissibility under § 1182(a)(3)(B) it is impossible to know if these, or any other, issues of statutory interpretation are at issue here.

Additionally, some of the subsections in § 1182(a)(3)(B) confer upon an alien the right to present evidence to rebut the cited reason for inadmissibility. For activity in support of organizations that have not been designated by the Secretary of State as terrorist organizations, an alien may offer "clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization." *See* 8 U.S.C. §§ 1182(a)(3)(B)(i)(VI); 1182(a)(3)(B)(iv)(IV)(cc); 1182(a)(3)(B)(iv)(V)(cc); 1182(a)(3)(B)(iv)(VI)(dd). The Second Circuit read this language to require a consular officer

to present the alien with the evidence of inadmissibility and permit him to offer a rebuttal. *Am. Acad.*, 573 F.3d at 131–32. Without knowing the specific subsection applicable to Berashk, we cannot determine whether the consular officer was required to give Berashk an opportunity for rebuttal.

To be clear, we do not "'look behind' exclusion decisions," *Am. Acad.*, 573 F.3d at at 137, but we must at least look at them, s*ee SEC v. Chenery Corp.*, 332 U.S. 194, 197 (1947) ("We must know what a decision means before the duty becomes ours to" review it.). The Second Circuit, recognizing, as do we, that no evidentiary inquiry is appropriate, explained that "a reviewing court need only satisfy itself that the conduct alleged fits within the statutory provisions relied upon as the reason for the visa denial." *Am. Acad.*, at 134 (concluding that visa applicant's alleged donations to a group that provided material support to terrorists fits with the statutory basis for denying the visa). Absent evidence of bad faith, we accept the Government's allegations as facts. *Bustamante*, 531 F.3d at 1062–63 ("It is not enough to allege that the consular official's information was incorrect.").

While the Government need not prove that Berashk performed an activity that renders him inadmissible under the statute, *see Adams*, 909 F.2d at 649, it must at least allege what it believes Berashk did that would render him inadmissible. We seek only to verify that the facts asserted by the Government, however bare, constitute a ground for exclusion under the statute. *See Am. Acad.*, 573 F.3d at 126–39 (reviewing whether facts alleged by the Government were grounds for exclusion, but declining to conduct any review of the facts themselves).

The Government's citation to § 1182(a)(3)(B), when combined with its failure to assert *any* facts, is not a facially legitimate ground for denying Berashk's visa. Should we conclude that citation to § 1182(a)(3)(B) is a facially legitimate reason for the denial of Berashk's visa, then citation to § 1182(a), which lists *all* grounds of inadmissibility, would be sufficient. Any judicial review would be wholly perfunctory requiring only that we ensure the Government has properly said nothing more than "8 U.S.C. § 1182(a)." Limited as our review may be, it cannot be that Din's constitutional right to review is a right only to a rubber-stamp on the Government's vague and conclusory assertion of inadmissibility. *Cf. United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004) (courts should "not simply rubber-stamp the government's request, but hold the government to its burden").[4]

The dissent does not alleviate our concern that the Government's approach would essentially eliminate all judicial review, even when the constitutional right of a U.S. citizen is implicated. According to the dissent, decisions to exclude aliens are made "exclusively by executive officers, without judicial intervention." Dissent at 30–31 (quoting *Mandel*, 408 U.S. at 766). This ignores, of course, that "courts have identified a limited exception to the doctrine where the denial of a visa implicates the constitutional rights of American citizens." *Bustamante*, 531 F.3d at 1061. The dissent's only attempt to give meaning to the exception recognized in *Mandel* and *Bustamante* is to state, "[t]here is

---

[4] While the dissent correctly notes that *DeGeorge* arose in a different context, we do not think that any form of judicial review, whether a product of statute or precedent, should be a rubber-stamp for the Government.

nothing facially illegitimate in the identification of section 1182(a)(3)(B) as the basis for the denial of Berashk's application." Dissent at 27. We do not think that even the most limited judicial review is so restrained as to ask only if the Government has successfully provided a citation to the U.S. Code.

We are similarly not persuaded by the argument advanced by the dissent that § 1182(b)(3) supports the Government's position. Dissent at 31–35. Section 1182(b) requires that the consular officer notify aliens if their visa is denied and provide the "specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1). In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress amended § 1182 and added (b)(3), which states that the disclosure requirement in § 1182(b)(1) does not apply if the alien is inadmissable for a reason stated in § 1182(a)(2) or (a)(3). Pub. L. No. 104–132, § 421, 110 Stat 1214 (1996) (codified at 8 U.S.C. § 1182(b)(3)).[5]

---

[5] The rationale for this provision was explained by the House Committee on the Judiciary:

> Currently, all foreign nationals who are denied a visa are entitled to notice of the basis for the denial. This creates a difficult situation in those instances where an alien is denied entry on the basis, for example, of being a drug trafficker or a terrorist. Clearly, the information that U.S. government officials are aware of such drug trafficking or terrorist activity would be highly valued by the alien and may hamper further investigation and prosecution of the alien and his or her confederates. An alien has no constitutional right to enter the United States and no right to be advised of the basis for the

Despite this provision, State Department regulations require consular officers to "inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available," 22 C.F.R. § 42.80(b), and make no exception for denials based on § 1182(a)(2) or (a)(3). As a result, consular officers appear to regularly disclose information to aliens, even if the denial is based on § 1182(a)(2) or (a)(3). *See, e.g.*, Complaint at 6 (describing email from Islamabad Embassy disclosing statutory basis for Berashk's visa denial); *Bustamante*, 531 F.3d at 1061 (describing letter from Consulate explaining basis for visa denial); *Am. Acad.*, 573 F.3d at 118 (describing telephone call from Government to applicant explaining that visa was denied because the applicant provided material support to a terrorist organization).[6]

---

denial of such a privilege. Thus, there is no constitutional impediment to the limitation on disclosure in this section.

H.R. Rep. 104-383, 102–03 (1995).

[6] The U.S. Department of State Foreign Affairs Manual explicitly recognizes that the statute only establishes the minimum amount of disclosure and states that "although 212(b) also exempts findings of ineligibility under INA 212(a)(2) and (3) from the written notice requirement, we expect that such notices will be provided to the alien in all 212(a)(2) and (3) cases unless: (1) We instruct you not to provide notice; (2) We instruct you to provide a limited legal citation (i.e., restricting the legal grounds of refusal to 212(a)); or (3) You request permission from us not to provide notice." 9 Foreign Affairs Manual 42.81 N2.

According to the dissent, § 1182(b)(3) means that "the Government was not required to provide more specific information regarding" the denial of Berashk's visa. Dissent at 33. This is correct as a matter of statutory interpretation. Under the statutory scheme, aliens have a statutory right to certain information if their visa is denied for most reasons; aliens have no such statutory right if the denial is based on 1182(a)(3) or (a)(2). This lack of an alien's statutory right to information is, however, not helpful in resolving the question we face: whether Berashk's visa was denied for "a facially legitimate and bona fide reason." *Bustamante*, 531 F.3d at 1060. To make that determination, a court needs some information.

First, the statute simply creates a statutory right to information, and limits the scope of that right. The dissent suggests that because the alien does not have a statutory right to information, by implication, the Government has an absolute right to withhold the information from everyone, including a citizen and this Court. Dissent at 34. The dissent cites no authority to support its assertion that an alien's lack of an affirmative statutory right to information functions as an implied prohibition on any disclosure to all people, and we decline to adopt such a position.

While we want to make it emphatically clear that the Government's obligation to provide information in this context is not even remotely close to the Government's obligation under *Brady v. Maryland*, 373 U.S. 83, 91 (1963), drawing an analogy to *Brady* exposes the fault in the Government's argument. The Jencks Act provides an affirmative statutory right to information and requires the Government to produce "any statement (as hereinafter defined) of the [testifying] witness in the possession of the

United States." 18 U.S.C. § 3500. *Brady* requires, at the defendant's request, that the prosecution disclose "[material] evidence favorable to an accused." 373 U.S. at 87. *Brady* is not limited by the Jencks Act and it "exists as an independent foundation to preserve evidence." *United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979). It would be implausible to suggest that the Government need not disclose *Brady* evidence that is outside the scope of the Jencks At because the defendant lacks a statutory right to the information. In fact, it is taken for granted that *Brady* material can exist outside the scope of the Jencks Act. *See United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009) (discussing, without controversy, "non-Jencks *Brady* information").

Similarly, the fact that Congress created a limited disclosure obligation in the context of visa denials does not mean that Congress otherwise prohibited the disclosure of all other information. We agree that "[i]t makes no sense to read the statute to *require* disclosure for such denials," dissent at 34 (emphasis added), but we do not read the statute that way. It would also make no sense to read the statute to prohibit the release of any information regarding certain visa denials, because if it did, the executive branch appears to violate the statute regularly. *See, e.g.*, 22 C.F.R. § 42.80(b); Complaint at 6; *Bustamante*, 531 F.3d at 1061; *Am. Acad.*, 573 F.3d at 118. The statute does not compel nor prohibit disclosure in this case.

Second, the dissent's reading of the statute is inconsistent with any concept of judicial review—including the dissent's reading of *Bustamante*. Because of § 1182(b)(3), when a visa denial is based on (a)(2) or (a)(3), the Government is not statutorily required to disclosure "the specific provision or

provisions of law under which the alien is inadmissible," 8 U.S.C. § 1182(b)(1)(B). By implication, the dissent suggests that "[n]o disclosure of information is required," dissent at 33, and therefore no information can ever be required by a reviewing court. But even the dissent reads *Bustamante* to require the Government to provide the exact information listed in § 1182(b)(1)(B)—the statutory provision under which the alien is inadmissible—to demonstrate that the visa denial is "facially legitimate." Dissent at 27. By the dissent's own logic, that reading of *Bustamante* is "directly contradict[ed]" by the statute. Dissent at 34. If the statute allows the Government to decline to provide more information in this case, then it must allow the Government to decline to provide *any* information. This would decisively eliminate judicial review and this reading of the statute is therefore precluded by *Bustamante*, which guarantees some review, no matter how limited.

The dissent's concern about "this nation's desire to keep persons connected with terrorist activities from entering the country," dissent at 34, is, of course, valid, but the Government never asserted such an argument here. And even if it had, nothing in our opinion compels dangerous disclosure. Another imperfect analogy to criminal procedure exposes the fault in relying on the statute's purpose to justify withholding information. For the same reason that Congress added § 1182(b)(3)—the desire to not jeopardize an ongoing investigation by announcing its existence—subjects of criminal investigations are routinely not informed that they are being investigated. For example, search warrant proceedings are "necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence." *Franks v. Delaware*, 438 U.S. 154, 169 (1978). The need for secrecy does not,

however, change the fact that the constitution guarantees a judicial determination of probable cause prior to the issuance of a search warrant. *United States v. Grubbs*, 547 U.S. 90, 99 (2006). It is inconceivable that the Government would argue that it could not provide the factual basis supporting probable cause based on the need to keep the investigation a secret—an *ex parte* hearing conceals the investigation, while still allowing judicial review.

In this case, if necessary, the Government could, as it does in other contexts, disclose the reason for Berashk's visa denial *in camera*. *See, e.g.*, *Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (reviewing *in camera* affidavits justifying the decision to withhold information from Freedom of Information Act disclosure on national security grounds); s*ee also Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1079–90 (9th Cir. 2010) (en banc) (describing the history and procedure of the state secrets doctrine and dismissing case). Existing procedures are adequate to address the national security concerns that we share with the dissent, and make it unnecessary to eliminate all judicial review and disclosure.

Because the Government has not offered a facially legitimate reason for the visa denial, the first part of the *Mandel* test is not met, and the decision is not subject to the prohibition on consular review. It is not necessary to address the second part of the test, whether the citation to § 1182(a)(3)(B) is bona fide. It is worth noting, however, that in *Bustamante*, we held that to prevail under the bona fide prong of the *Mandel* test a plaintiff must "allege that the consular official did not in good faith believe the information he had," 531 F.3d at 1062–63, and the dissent argues that "it would be impossible for plaintiff to plead [bad faith] because she did not know the particular basis for the denial of her

husband's visa application." Dissent at 26. The "bona fide" inquiry is therefore eliminated under the dissent's approach because the Government can simply cite a statute—and only a statute—and because the plaintiff is not informed what the consular official believes, she can never allege that the belief is held in bad faith. This suggests that the dissent has come to the incorrect conclusion that a bare citation to a statute is a facially legitimate ground for exclusion. Because the Supreme Court articulated that the Government must put forward a "facially legitimate *and* bona fide reason," *Bustamante*, 531 F.3d at 1062 (citing *Mandel*, 408 U.S. at 770) (emphasis added), it is unlikely that the "facially legitimate" requirement should be interpreted to allow the Government to withhold information and make an inquiry into the "bona fide" requirement "impossible."

## B.  Din's standing to challenge § 1182(b)(3)

The district court held that Din lacks standing to seek a declaratory judgment that 8 U.S.C. § 1182(b)(3) is unconstitutional as applied to her because the notice provisions apply to aliens, not to citizens with an interest in an alien's visa. As discussed above, we agree with the conclusion that § 1182(b)(3) does not apply to Din, and, for that reason, we do not think it supports the Government's motion to dismiss on consular nonreviewablity grounds. When the case is resolved on the merits, it is possible that the court may conclude that it can avoid reaching Din's constitutional challenge to the statute by determining that the statute, by its own terms, does not apply to her. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (constitutional issues should be avoided if a statutory issue resolves the case). But in reviewing a motion to dismiss, we cannot project a specific outcome on the merits

in order to decide the question of standing.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (noting that standing is distinct from the merits).  For the purposes of evaluating standing, we "must construe the complaint in favor of the complaining party."  *Id.*  Here, the complaint alleges that the Government is using the statute to justify an action that is injuring Din.  If the Government is doing so based on a flawed reading of the statute, that might provide a narrower ground to decide this case on the merits later, but it does not deprive Din of standing to challenge the law.  *See Nw. Austin*, 557 U.S. at 205.

To satisfy Article III's standing requirements, Din must show "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 180–81.  Further, a "person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."  *Lujan v. Defenders of Wildlife*, 504  504 U.S. 555, 573 n.7 (1992).

Din has a constitutionally protected due process right to limited judicial review of her husband's visa denial, which stems from her "[f]reedom of personal choice in matters of marriage and family life."  *Bustamante*, 531 F.3d at 1061–62.  To the extent that the Government relies on 8 U.S.C. § 1182(b)(3) to interfere with this right, Din has standing to challenge the provision.  Din alleges that the Government has deprived her of due process by refusing to provide either her or her husband with a facially legitimate

and bona fide reason for denying his visa. In so refusing, the Government in part relies on 8 U.S.C. § 1182(b)(3). A court's decision that 8 U.S.C. § 1182(b)(3) cannot defeat Din's claim could redress her injury. Therefore, § 1182(b)(3) appears to injure Din, and she has standing to challenge it.

## IV.    Conclusion

We decline the Government's invitation to turn our limited review into a mere formality. We conclude that the Government's citation to § 1182(a)(3)(B), in the absence of any allegations of proscribed conduct, is not a facially legitimate reason to deny Berashk's visa. Because the Government has not proffered a facially legitimate reason, Din's claims for a writ of mandamus directing the Government to adjudicate Berashk's visa application and for a declaratory judgment under the APA survive dismissal. Accordingly, we also conclude that Din has standing to challenge 8 U.S.C. § 1182(b)(3) as it has been applied to her. We remand Din's claims for further proceedings consistent with this opinion.

### REVERSED AND REMANDED.

CLIFTON, Circuit Judge, dissenting:

The majority opinion acknowledges the doctrine of consular nonreviewability and the "highly constrained" nature of our judicial review of the denial of a visa, *see Bustamante v. Mukasey*, 531 F.3d 1059, 1060 (9th Cir. 2008), but in practice it fails to accept that doctrine and act within that constraint. Instead, assuming that judicial review must be

more robust, it imposes upon the Government an obligation to provide information about a visa denial that, by statute, the government is specifically not required to provide when it denies a visa based on concerns for national security or terrorism. I respectfully dissent.

## I.   The Limited Nature of Judicial Review

The visa application of plaintiff's husband, Kanishka Berashk, a citizen and resident of Afghanistan, was denied by consular officials under 8 U.S.C. § 1182(a)(3)(B). Section 1182(a) identifies "classes of aliens ineligible for visas or admission" into the United States. The statute lists ten different categories of ineligible aliens, including one "miscellaneous" provision, subsection 1182(a)(10), which encompasses several unrelated grounds. One of the identified categories within section 1182(a) is subsection 1182(a)(3), entitled "Security and related grounds," one part of which, subsection 1182(a)(3)(B), is captioned "Terrorist activities." That provision was identified as the basis for the denial of Berashk's visa application.

As the majority opinion notes, at 7, we may review the denial of a visa only when the constitutional rights of an American citizen are implicated and then only by way of "a highly constrained review solely to determine whether the consular official acted on the basis of a facially legitimate and bona fide reason." *Bustamante*, 531 F.3d at 1060. Those two elements – facially legitimate and bona fide – were drawn directly from the Supreme Court's decision in *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).

We specifically held in *Bustamante* that denial of a visa based upon a statutory basis for inadmissibility is a denial for

"a facially legitimate reason." 531 F.3d at 1062. We also made clear that the inquiry into whether the reason for the visa denial was bona fide is limited to the question of whether the decision was made in good faith. Whether the decision to deny the visa was correct is not the issue. Rather, a plaintiff must "allege that the consular official did not in good faith believe the information he had. It is not enough to allege that the consular official's information was incorrect." *Id*. at 1062–63.

The district court dismissed the action based upon its application of *Bustamante*. It concluded that reliance upon a statute, specifically section 1182(a)(3)(B), provided a facially legitimate reason for denying the visa application. As for the bona fide element, the district court noted that plaintiff had not alleged in her complaint that the consular officials acted in bad faith or without a good faith belief in the information on which the denial was based. Further, the court held that it would be impossible for plaintiff to plead to that effect because she did not know the particular basis for the denial of her husband's visa application and thus would necessarily be unable to satisfy the plausible pleading requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court was right.

The majority opinion bases its conclusion on what it describes as the lack of a facially legitimate reason to deny Berashk's application and says that it does not reach the question of whether the reason given was bona fide. Majority op. at 21. The denial here was based on a statute, however. That statute provided a lawful reason for denying the application. The relevant definition of "legitimate" is "accordant with law." *Webster's Third New International*

*Dictionary* 1291 (2002). Because the denial of Berashk's application was based on law, the reason was at least "facially legitimate."

Although the majority opinion interprets *Bustamante* differently, by my reading that decision held that a statutory basis for inadmissibility is a facially legitimate reason. It stated:

> As set forth in the complaint, Jose was denied a visa on the grounds that the Consulate "had reason to believe" that he was a controlled substance trafficker. This is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility. 8 U.S.C. § 1182(a)(2)(C).

*Bustamante*, 531 F.3d at 1062. The majority opinion asserts, at 11, that citation to the statute was not enough by itself, and that "[t]he *reason* for exclusion in *Bustamante* was that 'the Consulate "had reason to believe" that he was a controlled substance trafficker.'" But that portion of our opinion in *Bustamante* simply repeated what the complaint in that case had alleged was the stated reason, one that the plaintiffs disputed. There was no finding or determination by the court. The "facial" legitimacy rested upon the citation to the statute. This case is no different. There is nothing facially illegitimate in the identification of section 1182(a)(3)(B) as the basis for the denial of Berashk's application.

Nor is there any factual basis for us to conclude or for plaintiff to allege that the reason for the denial was not bona fide because the consular official who made the decision acted in bad faith. Plaintiff alleges in her complaint that

Berashk was not engaged in any terrorist activity and that no facts exist to support a conclusion that he is inadmissible under the statute. The Bustamantes similarly alleged that Jose Bustamante was not a drug trafficker and asked that the case be remanded for factual development, but we held that their complaint must be dismissed because they did not allege that the consular official did not in good faith believe the information he possessed. *Bustamante*, 531 F.3d at 1062–63. The factual basis of the consular's decision is not within our highly limited review. As we held in *Bustamante*, quoted above, it is simply not enough to allege that the consular official's decision was wrong. That is not for us to decide.

The majority opinion holds that the reason given for excluding Berashk was inadequate in two ways, statutory and factual. Neither is persuasive.

First, it complains that the Government's reference to section 1182(a)(3)(B) is not sufficiently specific. It contends that the Government must cite to a statutory subsection narrow enough to permit the court to determine that it has been properly construed. Majority op. at 13. It observes that the statutory subsection cited in denying Berashk's application, section 1182(a)(3)(B), is longer than the statutory subsection cited in the denial of the application in *Bustamante*, section 1182(a)(2)(C). Majority op. at 12–13. But the length of a statute does not make it any less of a statute.[1]

---

[1] The citation was not as unspecific as the majority opinion suggests. Section 1182(a)(3)(B) contains several subsections, but all pertain to "terrorist activities." The Government did not simply cite to section 1182(a) as a whole. As discussed below, at 31–33, the Government is generally required to provide some explanation for a visa denial, but the

Nor does it provide a principled justification for denying the facial legitimacy of the consular official's decision. It is the Government's application of the statute to Berashk – its assessment of the facts, not any "construction" of the statute – that is disputed by plaintiff here. The key allegation of plaintiff's complaint is that:

> No good faith basis exists that is sufficient to constitute a facially legitimate and bona fide reason for the denial of Mr. Berashk's visa application under 8 U.S.C. § 1182(a)(3)(B). The fact of Mr. Berashk's low-level employment in the Afghan Ministry of Social Welfare before, during, and after the Taliban occupation of Afghanistan alone cannot trigger any of the grounds of inadmissibility listed in 8 U.S.C. § 1182(a)(3)(B), and no other facts relevant to those grounds of inadmissibility exist.

Plaintiff has argued that the cited subsection is an "umbrella" statute that is not specific enough for Berashk to know what to try to rebut, but plaintiff has not argued that the State Department might have misinterpreted this statute committed to its authority by Congress, and there is nothing in the record that suggests that it has.

The second reason given by the majority opinion is that the plaintiff and the court have not been provided by the Government with enough factual information to "allow us to determine if the specific subsection of § 1182(a)(3)(B) was

---

statute explicitly provides that denials under section 1182(a)(3)(B) are different.

properly applied." Majority op. at 10. That gets closer to what I perceive to be the majority opinion's actual concern. The majority opinion is premised on the assumption that the court must be provided with whatever additional information we deem necessary to permit us to conduct a more thorough review and on the corollary that we have the power to require the Government to provide that additional information. Thus, the majority opinion holds that the Government "must at least allege what it believes Berashk did that would render him inadmissible." *Id*. at 14. Otherwise, the majority opinion asserts, our review would be only a "rubber-stamp."[2]

We must recognize, however, that "[t]he power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country and to have its declared policy in that regard enforced exclusively by executive officers, without

---

[2] The majority opinion supports this statement with a citation with a "cf." signal to *United States v. DeGeorge*, 380 F.3d 1203, 1215 (9th Cir. 2004), describing that case as holding that "courts should 'not simply rubber-stamp the government's request, but hold the government to its burden.'" That citation provides no support for the majority opinion's conclusion here. To begin with, that criminal appeal had nothing whatsoever to do with the issue in this case. It made no mention of the doctrine of consular nonreviewability nor any reference to the highly constrained review that we are to apply here. Rather, it addressed a court order issued at the request of the government to toll the statute of limitations because evidence was located in a foreign country, based on a statute that authorized such tolling, 18 U.S.C. § 3292. Moreover, as our decision noted, the judicial review in that case was expressly required by that statute. *DeGeorge*, 380 F.3d at 1213–14 (citing 18 U.S.C. § 3292(a)(1)). When a statute requires that the district court make a given finding before issuing an order, it is no surprise that in reviewing the district court's order we held that the Government must be held to its burden. No similar authorization for judicial review exists here.

judicial intervention, is settled by our previous adjudications." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895)) (internal quotations omitted). Analysis of the applicant's underlying conduct has "been placed in the hands of the Executive." *Mandel*, 408 U.S. at 769. Our review here is supposed to be highly restrained.

That does not mean that our review is purely a formality or, as the majority opinion describes it, a rubber stamp. In many instances there will be more specific information available about the basis for a visa denial. When there is more information available, it is appropriate for a court to examine that information, as our court did in *Bustamante*, albeit still in the course of a limited review. But, as discussed below, Congress has specifically provided that the Government is not required to provide specific information about what lies behind a visa denial under subsection 1182(a)(3), the basis for the denial of Berashk's application. When the statute says that the Government does not have to disclose that information, compelling it to disclose the information anyway in order to allow "limited" and "highly restrained" judicial review cannot be justified.

## II.  8 U.S.C. § 1182(b)

By requiring the Government to disclose more specific information about the denial of Berashk's visa application, the majority opinion effectively disregards the statute that says that the government is not obligated to disclose that information.

After the categories of aliens deemed ineligible for visas are identified in 8 U.S.C. § 1182(a), the next part of the

statute, section 1182(b), provides for the notice to be given following the denial of a visa application. For denials based on most of the subsections of section 1182(a), some notice of the determination and its statutory basis is required.[3] But the statute, in section 1182(b)(3), explicitly carves out denials based on two subsections: 1182(a)(2) ("Criminal and related grounds") and 1182(a)(3) ("Security and related grounds").

---

[3] 8 U.S.C. § 1182(b) provides:

(b) Notices of denials

(1) Subject to paragraphs (2) and (3), if an alien's application for a visa, for admission to the United States, or for adjustment of status is denied by an immigration or consular officer because the officer determines the alien to be inadmissible under subsection (a) of this section, the officer shall provide the alien with a timely written notice that–

(A) states the determination, and

(B) lists the specific provision or provisions of law under which the alien is inadmissible or adjustment of status.

(2) The Secretary of State may waive the requirements of paragraph (1) with respect to a particular alien or any class or classes of inadmissible aliens.

(3) Paragraph (1) does not apply to any alien inadmissible under paragraph (2) or (3) of subsection (a) of this section.

The United States Code Annotated notes that the language quoted above from section 1182(b)(1)(B) is presented that way in the statute but that the word "adjustment" should probably be preceded by "ineligible for."

No disclosure of information is required when a visa denial is based on one of those subsections.

The denial of Berashk's visa was based on subsection 1182(a)(3). Under section 1182(b)(3), the Government was not required to provide more specific information regarding that denial.[4] The majority holds otherwise without giving serious consideration to the impact of section 1182(b)(3).

Plaintiff realizes that this statute poses a serious obstacle to her claim, and in her complaint, she presents as a separate claim for relief a challenge to the constitutionality of section 1182(b) as applied to her. The constitutional basis for the challenge is only vaguely described in the complaint as "procedural due process under the Fifth Amendment." The district court held that the notice provision only applies to the alien applicant for the visa, in this case Berashk, and not to his U.S. citizen wife, the plaintiff in this case, so it concluded that plaintiff lacked standing to challenge the statute. The majority opinion disagrees and reverses that part of the district court's order as well.

The majority opinion does not conclude that the statute is unconstitutional, however. Plaintiff has not yet presented her argument to that effect on the merits. The proposition that

---

[4] Contrary to the majority's assumption, at 18, the lack of an affirmative right to compel disclosure does not "function[] as an implied prohibition" against disclosure. Rather, courts are prohibited from demanding disclosure, in this context, and our cases say it explicitly. *See Bustamante*, 531 F.3d at 1062 (rejecting Bustamante's argument for remand in order to require the government "to present specific evidence to substantiate the assert[ed]" basis for the visa denial). Accordingly, the majority's inapposite discussion of *Brady* obligations, an area of law requiring robust judicial review of due process, lends no support to its holding.

this nation's desire to keep persons connected with terrorist activities from entering the country must be subordinated to plaintiff's desire for the information based on "procedural due process" strikes me as highly unlikely, particularly when there is no allegation that the Government failed to provide plaintiff or her husband the process that is required by the applicable statute.

What matters for now, though, is that the majority opinion effectively nullifies the statute simply by asserting that it "does not apply to Din." Majority op. at 22.[5] That misses the point. Even if the limitation on disclosure does not apply to Din, nothing else gives her the right to demand that the Government provide the information to her. More broadly, Congress has required disclosure to applicants of information regarding visa denials, except for denials based on criminal or security grounds. It makes no sense to read the statute to require disclosure for such denials simply because there might be a U.S. citizen interested in the application.

That statute should not be ignored. It directly contradicts the majority opinion's holding that the Government must provide more information about the denial of Berashk's visa. The statute says otherwise.

---

[5] The majority opinion describes this as a concession by the Government. Actually, it is the reason why the Government has argued, as the district court concluded, that Din does not have standing to challenge the exclusions under the statute. The majority opinion concludes that Din does have standing, but its broader conclusion that the statute can be disregarded because it does not apply to Din means that Din's procedural due process challenge is irrelevant – in which case she actually would lack standing.

In my view, the majority opinion has gone astray in two different ways.  It fails to honor the highly constrained nature of judicial review of a decision to deny a visa application.  And, in the process, it orders the government to disclose information that the relevant statute says that the government does not have to provide.  I respectfully dissent.